WILLIAM L. HUGHES, JR., v. NORTH CAROLINA STATE HIGHWAY
COMMISSION
AND
COLVARD OIL COMPANY, INC., v. NORTH CAROLINA STATE HIGHWAY
COMMISSION
AND
FARMERS EQUIPMENT, INC., v. NORTH CAROLINA STATE HIGHWAY
COMMISSION

No. 68SC92

(Filed 14 August 1968)

1. Eminent Domain § 7; Highways and Cartways § 5— rights of way
— acquisition by Highway Commission

The State Highway Commission can acquire right-of-way easements by
(1) purchase or agreement, (2) donation, (3) dedication, (4) prescrip-
tion, or (5) condemnation.

2. Eminent Domain § 7; Highways and Cartways §§ 1, 5— rights of
way — acquisition by condemnation or seizure

As written prior to 1959, G.S. 136-19 authorized the Highway Commis-
sion to acquire land for highway rights of way by condemnation or by
merely seizing the property and appropriating it to public use.

3. Eminent Domain §§ 7, 13; Highways and Cartways § 9— rights of
way — acquisition by seizure — owner's remedy

When the Highway Commission entered and seized land for highway
purposes without instituting condemnation proceedings, the owner's rem-
edy was to institute proceedings for compensation under G.S. 136-19 and
G.S. 40-11 et seq.

4. Eminent Domain § 1— condemnation and eminent domain — defini-
tion

The terms "condemnation" and "eminent domain" by definition admit

that the condemnor did not own or have title to the land, but that it took or appropriated the property of another for a public use.

**5. Eminent Domain §§ 7, 13— rights of way — proceeding by owner for compensation**

A proceeding instituted pursuant to G.S. 136-19 and G.S. 40-11 *et seq.* seeking compensation for land appropriated by the Highway Commission for highway rights of way is a condemnation proceeding rather than an action to try title.

**6. Eminent Domain §§ 7, 15— rights of way — condemnation — time of passage of title**

Under the 1959 amendment to G.S. 136-19, title to property condemned passes to the Highway Commission upon the filing of a petition and declaration of taking and the deposit of certain funds with the clerk of court.

**7. Eminent Domain §§ 7, 15— rights of way — condemnation — time of passage of title**

Prior to the 1959 amendment to G.S. 136-19, the title to property condemned was not divested from the owner unless and until the Highway Commission obtained a final judgment in its favor and paid the owner the damages fixed by the judgment.

**8. Eminent Domain § 13; Lis Pendens— condemnation proceedings by owner — grantees take title subject to proceedings**

A proceeding in condemnation under G.S. 136-19 and G.S. 40-11 *et seq.* instituted by the owner prior to the owner's conveyance of the property in question may be carried on and perfected as if no conveyance had been made, G.S. 40-26, and the proceeding constitutes a *lis pendens* so that persons acquiring title by *mesne* conveyances from the owner after the proceeding was begun take title to the land subject to the special proceeding and the judgment entered therein.

**9. Deeds § 14; Easements § 2— reservation of highway rights of way — description**

A statement in a deed following the description that the property conveyed consisted of all the land of the grantor lying between the main right of way of a designated highway and a certain road, "not including any part of said highways within said right of way lines" *is held* sufficiently definite to reserve title to the highway rights of way in the grantor.

APPEAL by defendant from *Gwyn, J.,* at the December 1967 Session of WILKES Superior Court.

This appeal consists of three separate civil actions involving claims against the North Carolina State Highway Commission (Commission) for alleged damages resulting from the widening of N. C. Highways 268 and 18 in the Town of North Wilkesboro, N. C. By agreement the three actions were consolidated for purpose of hearing and were submitted upon an agreed statement of facts.

Plaintiffs Colvard Oil Company, Inc. (Colvard) and Farmers Equipment, Inc., (Farmers) own certain property located adjacent to the highways aforesaid; plaintiff W. L. Hughes, Jr., (Hughes) is the lessee of the land owned by Colvard which is the subject of Colvard's action.

In 1911, one Henry T. Blair (Blair) acquired title to a tract of land in Wilkes County, in or near the Town of North Wilkesboro (Town). In 1938, the Commission, acting in accordance with an agreement with the Town, started its project No. 7806 for the improvement of what are now designated as Highways 268 and 18. A section of this project went through a portion of Blair's land, and construction was completed on 7 July 1940.

On 27 January 1940, Blair instituted a special proceeding before the Clerk of Superior Court for Wilkes County against Commission and the Town pursuant to Chapter 40 of the General Statutes. In his petition, Blair alleged that Commission and Town took a 100-foot right-of-way through his land for the construction of three roads during the year 1939, that Commission and Town had refused to pay him for the land taken, that said taking was done over his protest, and that he was entitled to recover $10,000 compensation. Answers were filed by Town and Commission admitting the taking of right-of-way but denying damages to Blair's property.

In August, 1945, Blair conveyed certain lands, including the lands in question now owned by Colvard and Farmers, to T. J. Frazier and wife (Frazier). The deed, duly recorded, contained the following language after the description: ". . . being all of the land of Henry T. Blair lying between the main right of way of Highway 268, the southern connecting road between Highway 268 and Highway 18, not including any part of said highways within said right of way lines." Thereafter, Frazier prepared a subdivision map of the property which was recorded in Wilkes County Registry on 12 July 1946; the map was entitled "Sunset Hills Addition to the Town of North Wilkesboro, Section 1" and indicated the location of Highways 268 and 18 but did not indicate the width of the right-of-way for said highways.

On 12 July 1946, Frazier conveyed Lot No. 1, as shown on the recorded map, to Colvard, and the deed contains the following language: "This deed is made subject to and shall conform with the State Highway right of way." Colvard proceeded to construct a gasoline service station on its lot and caused the area from its building to the edge of the highway pavement to be paved.

By deed dated 11 July 1946, Frazier conveyed certain lots as

shown on the recorded map to one Crawford and Eller; by *mesne* conveyances, Farmers acquired title to the Crawford and Eller property. At least one of the deeds in the chain of title between Frazier and Farmers contained the following language after the description: "This deed shall conform and is subject to the State Highway right of way."

On 23 November 1951, the Clerk of Wilkes County Superior Court terminated the special proceeding between Blair and Commission and Town by entering a judgment consented to by Blair, the Commission, the Town, and their attorneys. The judgment, *inter alia*, decreed that Commission acquired certain easements of rights-of-way prior to 7 July 1940, said easements being described by courses and distances with a width of 100 feet or more for Highways 268 and 18; the judgment provided that Blair was being paid $750.00 as just compensation for the taking.

In February, 1964, Commission let the contract for its Project 6.800573, Wilkes County, which project consisted of grading, draining, widening, surfacing, and installing combination curb and gutter from a point at the intersection of Highways 268 and 18 along Highway 268 for approximately 0.9 mile. The project was duly completed on 1 November 1964, and all of the work done was within the 100-foot right-of-way embraced in the Blair consent judgment aforesaid.

Plaintiffs filed separate actions alleging damages. Colvard and Farmers alleged that Commission took a portion of their lands for highway purposes. Hughes alleged that he was the lessee of Colvard and that he was damaged by the taking. Commission filed answer in each of the three cases, denied the taking, and pleaded the Blair judgment in bar of any recovery.

Plaintiffs contend that Commission did not own a 100-foot wide right-of-way but that it owned only an easement between two ditches.

Following the hearing, Judge Gwyn entered judgment as follows:

"Upon the agreed statement of facts the Court is of the opinion that by the Judgment in the Blair case dated November 23, 1951, the plaintiffs were not divested of their title to the lands in controversy;

"IT IS THEREFORE CONSIDERED, ORDERED AND ADJUDGED that the plaintiffs are the owners of the lands described in the Petition in the Blair case as embraced within the 100-foot right-of-way, exclusive of so much of the right-of-way as was used, from ditch to ditch, for the actual construction of the highway. It is

further adjudged that the plaintiffs are entitled to compensation for their lands embraced within the 100-foot right-of-way and which were appropriated for the widening of Highway 268 and Highway 18, as alleged in the pleadings.

"The plaintiffs are permitted to amend their pleadings to make more definite, by metes, bounds and markers, the description of the lands alleged to have been appropriated by the State Highway Commission as embraced within the said 100-foot right-of-way."

Commission entered various exceptions to the judgment and appealed.

*McElwee & Hall by John E. Hall and Moore & Rousseau by Julius A. Rousseau, Jr., attorneys for plaintiff appellees.*

*T. Wade Bruton, Attorney General, by Harrison Lewis, Deputy Attorney General, and Charles M. Hensey, Trial Attorney, for defendant appellant.*

BRITT, J.

The question presented by this appeal can be stated as follows: Did Commission, by virtue of the 1951 judgment in the special proceeding instituted by Blair in 1940, acquire an easement approximately 100 feet wide in the land in question as against plaintiffs who were not parties to the special proceeding and acquired their title indirectly from Blair between 1945 and 1951? The answer is yes.

The proceeding instituted by Blair in 1940 was initiated pursuant to the provisions of G.S. 40-12 *et seq.* (Vol. 2A, G.S. N.C., 1950 Recompilation). This procedure was directed by G.S. 136-19, which — prior to the 1959 amendment — provided in relevant part as follows:

"The State Highway and Public Works Commission is vested with the power to acquire such rights of way and title to such land . . . as it may deem necessary and suitable for road construction . . . either by purchase, donation, or condemnation, in the manner hereinafter set out.

"Whenever the Commission and the owner or owners of the lands . . . required by the Commission . . . are unable to agree as to the price thereof, the Commission is hereby vested with the power to condemn the lands . . . and in so doing the ways, means, methods, and procedure of Chapter 40, entitled

'Eminent Domain,' shall be used by it as near as the same is suitable for the purposes of this section. . . .

"In case condemnation shall become necessary, the Commission is authorized to enter the lands and take possession of the same . . . prior to bringing the proceedings for condemnation, and prior to the payment of the money for said property.

"In the event the owner or owners shall appeal from the report of the commissioners, it shall not be necessary for the Commission to deposit the money assessed with the clerk, but it may proceed and use the property to be condemned until the final determination."

[1]   North Carolina statutes and court decisions set forth the following methods by which the Highway Commission can acquire right-of-way easements: (1) purchase or agreement; (2) donation; (3) dedication; (4) prescription; or (5) condemnation.

Obviously, the Commission acquired a right-of-way easement over a portion of the Blair property; a consideration of the various methods leads us to conclude that the easement the Commission acquired was by condemnation.

[2]   The statutory and case law of our State provide without question that the Highway Commission can acquire highway rights-of-way by condemnation. G.S. 136-19; *Browning v. Highway Commission*, 263 N.C. 130, 139 S.E. 2d 227. As written prior to 1959, G.S. 136-19 provided that the Commission could acquire land for highway rights-of-way by condemnation and that the Commission could enter lands and take possession prior to bringing the condemnation proceeding. In discussing G.S. 136-19 in *Moore v. Clark*, 235 N.C. 364, 70 S.E. 2d 182, Ervin, J., said:

"The State Highway . . . Commission possesses the sovereign power of eminent domain, and by reason thereof can take private property for public use for highway purposes. G.S. 136-19 . . . The Commission may do this either by bringing a special proceeding against the owner for the condemnation of the property under G.S. 136-19, or by actually seizing the property and appropriating it to public use. . . . *The owner is at liberty to bring such proceeding against the Commission in case the latter takes his property merely by seizing it and appropriating it to public use for highway purposes. . . .*" (Emphasis added.)

[3]   For the purposes of this appeal, it can be assumed that the Commission entered and seized a portion of Blair's land in 1938 or

1939. When this occurred, the proper remedy was to institute proceedings under G.S. 136-19. *Moore v. Clark, supra; McKinney v. Highway Commission,* 192 N.C. 670, 135 S.E. 772; *Jennings v. Highway Commission,* 183 N.C. 68, 110 S.E. 583. At that time, G.S. 136-19 provided that — as nearly as possible — the procedures and methods provided in G.S. 40-11 *et seq.* should be used. *Williams v. Highway Commission,* 252 N.C. 772, 114 S.E. 2d 782; *Gallimore v. Highway Commission,* 241 N.C. 350, 85 S.E. 2d 392. Pursuant to the provisions of G.S. 40-12 *et seq.,* Blair on 27 January 1940 filed his proceeding alleging a taking and seeking compensation. Judgment was not entered in this proceeding until 23 November 1951. In the stipulated facts for the instant action, it is agreed that Commission "did not file a *lis pendens* nor did the defendant cross-index the pending suit."

[4, 5]   The phrase "condemnation" or "exercise of the power of eminent domain" by its very definition admits the condemnor did not own or have title to the land, but rather that it took or appropriated the property of another for public use. *Wescott v. Highway Commission,* 262 N.C. 522, 138 S.E. 2d 133. Thus, Blair's proceeding under G.S. 136-19 and G.S. 40-12 *et seq.* was a condemnation proceeding rather than one to try title.

[6, 7]   The 1959 amendment to the condemnation statutes provides that  title passes to the Highway Commission upon the filing of a petition and declaration of taking and payment of certain funds into the Clerk of Court's Office. In *Highway Commission v. Industrial Center,* 263 N.C. 230, 139 S.E. 2d 253, the Supreme Court pointed out that prior to 1959, the Highway Commission, when it had to acquire title by condemnation, was to act under the provisions of G.S. 40-12 *et seq.* The court pointed out: "In proceedings instituted pursuant to the provisions of c. 40, '[t]he title of the landowner is not divested unless and until the condemnor obtains a *final judgment* in his favor *and* pays to the landowner *the amount of the damages fixed by such final judgment.'* "

[8]   G.S. 40-26 provides as follows:

"§ 40-26.  Change of ownership pending proceeding. — When any proceedings of appraisal shall have been commenced, no change of ownership by voluntary conveyance or transfer of the real estate or other subject matter of the appraisal, or any interest therein, shall in any manner affect such proceedings, but the same may be carried on and perfected as if no such conveyance or transfer had been made or attempted to be made. (1871-2, c. 138, s. 22; Code, s. 1950; Rev., s. 2594; C.S., s. 1730.)"

8 IN THE COURT OF APPEALS [2

HUGHES v. HWY. COMM. & OIL CO. v. HWY. COMM. & EQUIP., INC. v. HWY. COMM.

Chapter 40 of the General Statutes, entitled "Eminent Domain," provides for procedure in condemnation cases, not only by the Highway Commission but by other corporations or agencies entitled to exercise the right of eminent domain. The agencies or corporations are set out in G.S. 40-2; this statute, with certain modifications, has been a part of our law since 1871. Railroad companies are included in the list, and decisions of our Supreme Court relating to condemnation by railroad companies are helpful in determining the law in the case at bar.

In *Abernathy v. R. R.*, 159 N.C. 340, 74 S.E. 890, the defendant railroad entered upon the land of plaintiff and constructed a roadbed. Plaintiff, the sole owner of the property at the time of the taking, instituted an action for compensation under the statute. While the action was pending, but before the judgment was rendered, he conveyed a one-third interest in the land to one Berry. Defendant railroad contended it had to pay only two thirds of the compensation to plaintiff, relying on the cases of *Liverman v. R. R.*, 109 N.C. 52, 13 S.E. 734, *Phillips v. Telegraph Co.*, 130 N.C. 513, 41 S.E. 1022, and *Beal v. R. R.*, 136 N.C. 298, 48 S.E. 674. The court distinguished those cases on the grounds that the transfer of title occurred before the proceeding of an appraisal or condemnation had commenced. It cited G.S. 40-26 and held that the case was governed by that section since conveyance of title to Berry was not made until after the proceeding was commenced. "We are not required to consider what claim Berry may have upon the plaintiff, as that matter is not before us. L. A. Berry is not a party to this suit."

In *Caveness v. R. R.*, 172 N.C. 305, 90 S.E. 244, plaintiff brought an action to recover permanent damages by reason of the construction and operation of defendant railroad. The railroad was not constructed through plaintiff's lot but along the street adjacent to plaintiff's lot. It does not appear that any of his land was taken but that he was injured by impairment of value, noise, smoke, cinders, dust, etc. While his suit was pending, plaintiff sold to one Sanders, who in turn conveyed to others. The railroad contended a judgment for plaintiff could not be sustained because it appeared that plaintiff had conveyed the title to another and the right of recovery followed as an incident to the title. The court — through Hoke, J. — held this position untenable.

After quoting Revisal, sec. 2594 (now G.S. 40-26), the court declared:

"The proceedings by this section are constituted a *lis pendens*, and, although the grantee, as stated, prior to payment of the

N.C.App.]          SPRING SESSION, 1968          9

HUGHES *v.* HWY. COMM. & OIL CO. *v.* HWY. COMM. & EQUIP., INC. *v.* HWY. COMM.

amount may be entitled to this compensation, if proceedings have been instituted, he must assert his right by action or appropriate proceedings in the cause. *Abernathy v. R. R., (supra)*. And so, under our decisions, in case of suit the railroad company acquires the right to remain and construct its road when the owner enters suit for permanent damages for trespass. He thereby assents to the company's right to occupy and build its road upon the land upon the payment of the amount due, and the entire compensation for the easement should inure to the owner, who recognizes the railroad's right by entering this character of suit. *Liverman v. R. R., (supra); White v. R. R.,* 113 N.C., at p. 622; *Staton v. R. R.,* 147 N.C., at p. 443.

"Under any view of the matter, therefore, the present recovery must be sustained, it appearing from the record that plaintiff owned the land when the railroad entered and constructed its road, and pending his ownership and before conveyance he entered suit and filed his complaint for permanent damages."

[8] This case is controlled by the provisions of G.S. 40-26. Therefore, in the light of that statute and the decisions of our Supreme Court applying it, we hold that in this case the special proceeding instituted by Blair in 1940 constituted a *lis pendens* and that plaintiffs took title to their lands and interests therein subject to the special proceeding and judgment entered therein in 1951. *Lis pendens* notice under G.S. 1-116 is not exclusive. *Whitehurst v. Abbott,* 225 N.C. 1, 33 S.E. 2d 129.

Furthermore, plaintiffs were provided with additional notice of existence of Commission's right-of-way easement. In the deed executed by Blair to Frazier, plaintiffs' predecessor in title, Blair reserved his rights in the highway rights-of-way. In the deeds from Frazier to plaintiffs or their predecessors in title, the highway rights-of-way were expressly excepted.

[9] Plaintiffs strenuously argue that the reservation of title to the rights-of-way set forth in the deed from Blair was ineffective because of ambiguity in the description of the land in which he purported to reserve his rights. Our Supreme Court has not applied a rule of strict construction on conveyances or reservations of easements. In *Borders v. Yarbrough,* 237 N.C. 540, 75 S.E. 2d 541, in an opinion by Parker, J. (now C.J.), the court upheld an easement set forth in a deed as follows: "This lot is sold subject to an easement across the same (lot No. 6 of a subdivision) for a sewerage line running from lot No. 5 to the disposal in the street. This shall be a perpetual easement under this lot." Also in *Bender v. Tel. Co.,* 201

N.C. 355, 160 S.E. 352, the court upheld an easement for telephone and telegraph lines across a sizeable tract of land, described only by adjoining land owners and there being no description or designation of the particular part of the land that the lines could be constructed on.

Blair instituted his proceeding under G.S. 40-12 *et seq.* in 1940, alleging that Commission and Town had taken rights-of-way 100 feet wide. Title passed to Commission and Town when judgment was entered in the proceeding in 1951 and the money ordered paid by the judgment was paid. *Highway Commission v. Industrial Center, supra.* Plaintiffs were and are bound by said judgment. G.S. 40-26; *Abernathy v. R. R., supra; Caveness v. R. R., supra.* Furthermore, Blair, in his deed to plaintiffs' predecessor in title, expressly reserved his right to collect for the rights-of-way.

Defendant's assignments of error to Judge Gwyn's judgment are sustained. The judgment is vacated and this action is remanded for proper judgment consistent with this opinion.

Error and remanded.

CAMPBELL and MORRIS, JJ., concur.