IN RE: CONDEMNATION OF PROPERTY OF WILLIAM EARL SIM-MONS AND WIFE, ETHEL HAYES SIMMONS (RESPONDENTS) BY THE CITY OF GREENSBORO (PETITIONER)

No. 6918SC61

(Filed 18 June 1969)

1. **Appeal and Error § 39—  docketing of appeal — time of docketing**

   The appeal is subject to dismissal where record on appeal was docketed in the Court of Appeals one day after the ninety-day period for docketing expired. Court of Appeals Rules Nos. 5 and 48.

2. **Eminent Domain § 7—  proceedings — petition — description of land**

   The petition of the condemnor must precisely describe the land sought to be condemned.

3. **Eminent Domain § 7—  description of land — entire tract v. portion**

   It is not necessary to describe an entire tract of land where only a portion is to be condemned.

4. **Eminent Domain § 7—  petition — description of land — sufficiency of description**

   In a condemnation by a municipality for purpose of widening a city street, resolutions which described the entire tract owned by the respondent landowners and attempted to condemn any and all property rights that respondents might have which were in conflict with the widening for a distance of twenty-two feet from the center line of the street *are held* ineffectual as a description of the property sought to be condemned.

5. **Eminent Domain § 7—  proceedings — inconsistent claims by condemnor — damages**

   Where municipal condemnor expressly denied in its resolutions of con-

demnation that the respondents had any title to or rights in the property sought to be condemned but instead asserted that it owned the property in dispute, trial court did not err in granting respondents' motion to dismiss the resolutions on the ground that condemnor inconsistently claimed title to the property sought to be condemned; condemnor's contention that the trial court should have determined the issue of damages is without merit.

**6. Eminent Domain § 1— nature and extent of power**

The terms "condemnation" and "exercise of the power of eminent domain" by definition admit the condemnor did not own or have title to the land but rather that it took or appropriated the property of another for public use.

**7. Eminent Domain § 7— proceedings — determination of damages — title**

The best interests of efficient judicial administration would not be served by determining the issue of damages prior to determining the issue of title.

**8. Eminent Domain § 7— proceedings — motion to amend petition**

The granting of a motion to amend a petition for condemnation lies in the discretion of the court.

APPEAL by petitioner from *Collier, J.,* 19 August 1968 Non-jury Civil Session, Greensboro Division, GUILFORD County Superior Court.

On 8 November 1967 a resolution under date of 5 June 1967 was filed by petitioner pursuant to Chapter VI, Subchapter B, Article 1 of the Charter of petitioner, as revised and reorganized by Chapter 1137 of the 1959 Session Laws of North Carolina. The resolution provided for the immediate condemnation of the property interest, if any, of respondents, and it stated:

"1. That for the purpose of widening Church Street approximately twenty-two feet from its present center line within the vicinity of property owned by [respondents], located at 2802 Church Street, any and all property rights that said [respondents] may have which are in conflict with and contrary to the said widening and improvement for a distance of twenty-two feet from the center line of Church Street are hereby condemned in accordance with the Charter of [petitioner]. . . .

. . . .

3. That [petitioner] take immediate possession, if it has not already done so, of said portion of property pending the determination of damages to the [respondents], if any, for such alleged taking, the use thereof being necessary for street purposes and public interest requires that said widening be accomplished.

. . . . .

10. That, in authorizing the condemnation herein, it is expressly denied that said [respondents] have any rights within the above mentioned improvement area nor are they entitled to any damages for an alleged taking thereof; however, in order to determine the respective rights of the parties and to proceed with the completion of the project and in order to alleviate the dispute as to right of possession and title, this condemnation proceeding is hereby commenced."

In accordance with the provisions of the resolution, a personal inspection was conducted by three appointed appraisers. On 20 July 1967 they reported to the petitioner that "the reasonable value of the property interest condemned is $1,189.00." This report was filed on 8 November 1967.

On 8 November 1967 a final resolution under date of 16 October 1967 was filed by petitioner. It stated:

"1. That for the purpose of widening Church Street approximately twenty-two feet from its present center line within the vicinity of property owned by [respondents], located at 2802 Church Street, any and all property rights that said [respondents] may have which are in conflict with and contrary to said widening and improvement for a distance of twenty-two feet from the center line of Church Street are hereby condemned in accordance with the Charter of the [petitioner]. . . .

. . . .

3. That the appraisers have appraised the damages at $1,189.00.

. . . .

4. That, without prejudice to the [petitioner] regarding its former claim for right-of-way as set forth in its previous resolution, the report of the appraisers is hereby approved, and the payment of the award . . . is hereby authorized. . . ."

The respondents excepted to this final resolution and appealed to the Guilford County Superior Court because the award was allegedly inadequate and not representative of the reasonable market value of the property in question. In the notice of appeal, the respondents expressly reserved their right to object to the irregularities in and unconstitutionality of the condemnation proceeding.

On 17 November 1967 a motion to dismiss the action was filed by the respondents, who alleged that Chapter VI, Subchapter B, Article 1 of the Charter of petitioner was unconstitutional and that there were irregularities in the condemnation proceeding. It was alleged that petitioner claimed ownership of the property in question,

but at the same time sought to condemn it, and that this was, therefore, an attempt to quiet title in a condemnation proceeding. The respondents also excepted to the description in the resolution because it failed to describe specifically the property to be condemned. It simply described the entire tract owned by the respondents.

On 22 August 1968 petitioner filed a motion to amend the resolution and the final resolution in order to provide that the respondents owned the property in question and to describe specifically the property to be condemned. Petitioner also made a motion to be allowed to introduce evidence "that the award of the appraisers set forth in the final resolution of the [petitioner] was based on an appraisal which assumed that respondents owned all the property within the 22-foot right-of-way being condemned by said resolution." However, the presiding judge denied these motions.

On 22 August 1968 a judgment was filed dismissing the action because petitioner failed "to precisely describe the property or interest it seeks to condemn" and because petitioner claimed title to the property sought to be condemned. The petitioner excepted and appealed to this Court.

*Jesse L. Warren; Cooke & Cooke by William Owen Cooke for petitioner appellant.*

*Turner, Rollins, Rollins & Suggs by Thomas Turner; J. Owen Lindley for respondent appellees.*

CAMPBELL, J.

**[1]** The date of the judgment appealed from is 22 August 1968. The record on appeal was docketed in this Court on 21 November 1968, one day after the ninety-day period for docketing expired. Therefore, this appeal may be dismissed under Rule 48 of the Rules of Practice in the Court of Appeals for failure to comply with Rule 5. However, we have nevertheless considered the appeal on its merits.

**[2, 4]** Petitioner's first contention is that the presiding judge erred in sustaining the respondents' motion to dismiss based upon the finding that petitioner failed to describe precisely the property sought to be condemned. In its brief, petitioner concedes "that there can be no proper condemnation without a description of the property condemned" and that "[a] controversy as to what land a condemnor is seeking to condemn has no place in a condemnation proceeding". However, it is argued that the respondents were not misled by the absence of a precise description, because the whole tract owned by

the respondents was described in the resolution and final resolution and because "[t]he resolution condemns any and all property rights that respondents may have which are in conflict with the widening of Church Street for a distance of 22 feet from its center line. Since the tract owned by respondents adjoins the east margin of Church Street, the property of respondents to be taken is that part of said tract lying between the old east margin of Church Street and the new east margin which new east margin will be 22 feet from the center line of Church Street."

[3]    Chapter VI, Subchapter B, Article 1, Sections 6.103(a)(1) and 6.110(4) of Chapter 1137 of the 1959 Session Laws of North Carolina require that both the resolution and final resolution include a description of the property to be condemned. It is not necessary to describe an entire tract of land where only a portion is to be condemned. 6 Nichols on Eminent Domain, § 26.112, p. 175. In the instant case, the entire tract was described, and both of the resolutions stated that the curb line of Church Street was to be extended to a distance of 22 feet from the then existing center line. However, the specific portion to be condemned was not described, and no reference was made to any survey from which it could be determined. Neither the resolution nor the final resolution contained any information from which "the old east margin of Church Street" could be located and no reference was made to any source which would provide this information. "A controversy as to what land a condemnor is seeking to condemn has no place in a condemnation proceeding. It is for the condemnor to determine what land it seeks to condemn . . . and to describe it in its petition by reference to uncontroverted monuments. . . ." *Light Company v. Creasman*, 262 N.C. 390, 137 S.E. 2d 497.

"The petition must contain an accurate description of the land sought to be taken, so that the extent of the claim will appear on the record. In the absence of an opportunity to amend the petition, failure in this respect will invalidate the proceeding. This description should be, it is sometimes said, as accurate as is required in the case of a deed of land. At any rate it must be such that a surveyor could locate the parcel described without the aid of extrinsic evidence. . . . It is no objection that the description is incomplete or unintelligible without consultation with a map or plan, if the map is referred to in the description and is filed with it, and taken together the map and the description make clear what is intended to be included in the taking. A map not referred to in the description cannot be considered.

. . . Accuracy in the description is deemed essential. . . ."
6 Nichols on Eminent Domain, § 26.112, p. 175. See 29A C.J.S.,
Eminent Domain, §§ 259(a) and 259(d), pp. 1105 and 1113; 27
Am. Jur. 2d, Eminent Domain, § 396, p. 274.

The first contention is without merit.

[5] Petitioner's second contention is that the presiding judge erred
in sustaining the respondents' motion to dismiss based upon the
finding that petitioner claimed title to the property sought to be
condemned. In its brief, petitioner stated:

> "The fact that the resolutions may have raised some questions
> of title should not have been a ground for dismissal; they should
> have been disregarded and the Trial Court should have pro-
> ceeded to try the issue of damages."

[6] Chapter VI, Subchapter B, Article 1, Sections 6.103(a) (4) (6),
6.110(6), 6.111 and 6.112 of Chapter 1137 clearly indicate that a
condemnation proceeding is to involve two sides, petitioner and the
owner or owners of the property to be condemned. There is no pro-
vision for the exercise of the power of eminent domain where title
is claimed by petitioner. Such a provision would in fact be contrary
to and inconsistent with the definition of condemnation. "The phrase
'condemnation' or 'exercise of the power of eminent domain' by its
very definition admits the condemnor did not own or have title to
the land, but rather that it took or appropriated the property of an-
other for public use. . . ." *Hughes v. Hwy. Comm.,* 2 N.C. App. 1,
162 S.E. 2d 661. *Wescott v. Highway Commission,* 262 N.C. 522,
138 S.E. 2d 133; 29A C.J.S., Eminent Domain, § 260, p. 1113; 27
Am. Jur. 2d, Eminent Domain, § 405, p. 287. Condemnation is de-
fined in Black's Law Dictionary, 4th Ed., as follows:

> "The process by which [real] property of a private owner is
> taken for public use, without his consent, but upon the award
> and payment of just compensation, being in the nature of a
> forced sale and condemner stands toward owner as buyer toward
> seller."

> "[T]he petitioner is estopped from showing that title is in the
> public or in itself, by dedication, prescription or otherwise, if
> it has alleged in its petition that the respondent is the owner.
> If the petitioner claims title to the land which it wishes to oc-
> cupy, a petition for condemnation is not the proper proceeding
> to institute for the purpose of trying the question." 2 Nichols
> on Eminent Domain, § 5.2[2], p. 22.

In *Power Co. v. King,* 259 N.C. 219, 130 S.E. 2d 318, the Supreme

Court quoted with approval from *Grand River Dam Authority v. Simpson*, 192 Okla. 338, 136 P. 2d 879, as follows:

> " 'The institution of the proceeding admits the ownership. The condemnor cannot claim the beneficial ownership of the land and at the same time assert that the condemnee claims all or some part of that interest; the proceeding in condemnation can-not be employed as a means to quiet title; and the right to exercise the power of eminent domain is dependent entirely upon the ownership being in some one other than the condemnor; the power to condemn negatives ownership in the condemnor.' ",

In *Houston North Shore Ry. Co. v. Tyrrell*, 128 Tex. 248, 98 S.W. 2d 786, the Supreme Court of Texas stated:

> ". . . 'A party cannot proceed to condemn land as the property of another and then in that same proceeding set up a paramount right or title in itself either by prescription, dedication or otherwise.' Lewis' Eminent Domain (3d Ed.) § 441, vol. 2, p. 1137. If the petitioner in condemnation claims the fee title to the property, his petition should be dismissed. . . . The reasons for the foregoing general rules are: That there is irreconcilable inconsistency between an allegation by the condemnor of the entire title, or a paramount title, in himself, and the taking of the property of another by the proceeding; that condemnation rests upon necessity, and there can be no necessity to acquire what one already owns. . . ."

**[5, 7]**     Petitioner, however, expressly denied in the resolution that the respondents had any title to or rights in the property, and this position was reaffirmed in the final resolution. Petitioner nevertheless sought to settle the issue of damages before the issue of ownership was resolved. In *Hertford v. Harris*, 263 N.C. 776, 140 S.E. 2d 420, a case in which there was no dispute over title between the town and the owners, the Supreme Court stated:

> ". . . A governmental agency has no need or right to condemn property which it owns. . . . Where controversy exists between condemnor and condemnee as to which has title, logic would seem to dictate that value should be ascertained only after these rights have been determined. . . ."

The best interests of efficient judicial administration would not be served by determining the issue of damages prior to determining the issue of title.

> "The [respondents'] ownership of the property sought to be condemned lies at the very foundation of the [petitioner's] jur-

isdiction. To permit the [petitioner] to claim title in the public way it seeks to condemn deprives the proceedings of all foundation. It would render the judicial condemnation proceedings nothing but a sham. . . ." *Demers v. City of Montpelier,* 120 Vt. 380, 141 A. 2d 676.

Therefore, it was not incumbent upon the presiding judge to disregard such an express contention and "to try the issue of damages".

The second contention is without merit.

[8]    Petitioner's third contention is that the presiding judge erred in denying petitioner's motion to amend the resolution and final resolution in order to provide that the respondents owned the property to be condemned and to describe same specifically. "The granting of a motion to amend lies in the discretion of the court." 6 Nichols on Eminent Domain, § 26.21, p. 248. 29A C.J.S., Eminent Domain, § 265, p. 1124.

There is no provision for an absolute right to amend the condemnation resolutions in Chapter 1137. Chapter VI, Subchapter B, Article 1, Section 6.113 of Chapter 1137 simply provides that "such appeal [to the superior court] shall be tried as other actions at law". "[I]t has been uniformly held that the denial of a motion to amend, being a matter within the sound discretion of the trial court, is not reviewable upon appeal except in case of manifest abuse of discretion." *Hogsed v. Pearlman,* 213 N.C. 240, 195 S.E. 789. No abuse of discretion has been made to appear in the instant case.

The third contention is without merit.

Affirmed.

BRITT and MORRIS, JJ., concur.