ALLEN CHARLES DeHART and LUEARTTIE DeHART, Plaintiffs v. NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, Defendant

No. COA08-216

(Filed 17 February 2009)

**1. Appeal and Error; Eminent Domain— inverse condemnation—dismissal order—voluntary dismissal of remaining claim—timeliness of notice of appeal**

Plaintiff landowners who brought breach of contract and inverse condemnation claims against the DOT were not required to immediately appeal the trial court's dismissal of their inverse condemnation claim but could wait until they thereafter voluntarily dismissed their breach of contract claim, at which time the order dismissing their inverse condemnation claim became

DeHART v. N.C. DEP'T OF TRANSP.

[195 N.C. App. 417 (2009)]

a final order. Therefore, plaintiffs' notice of appeal filed within 30 days after the trial court's dismissal order became final was timely.

**2. Eminent Domain— inverse condemnation—slope of private driveway—failure to show deprivation of use of property**

The trial court did not err by dismissing plaintiffs' claim for inverse condemnation arising out of the failure of defendant DOT to grade their driveway at the slope of no more than ten percent as required by a compromise settlement of a condemnation action because there was no taking where plaintiffs only alleged that DOT's actions have not improved the value of their land to the degree they expected under the agreement; and plaintiffs have not established that the increased slope of the new driveway substantially deprived them of the use of their property.

Appeal by plaintiffs from order entered 7 September 2006 by Judge Dennis J. Winner in Graham County Superior Court. Heard in the Court of Appeals 28 August 2008.

*Moody & Brigham, PLLC, by Fred H. Moody, Jr. and Justin B. Greene, for plaintiffs-appellants.*

*Attorney General Roy Cooper, by Assistant Attorney General David P. Brenskelle, for defendant-appellee.*

GEER, Judge.

Plaintiffs Allen Charles DeHart and Luearttie DeHart appeal from the trial court's dismissal of their claim for inverse condemnation arising out of the failure of the North Carolina Department of Transportation ("DOT") to grade their driveway at a slope of no more than 10 percent after widening a highway running past plaintiffs' property. Because plaintiffs have not established that they were substantially deprived of the use of their property by DOT's actions, we affirm the trial court's order.

## Facts

Plaintiffs own a tract of land in Graham County, North Carolina. In 1998, DOT condemned a portion of plaintiffs' property in order to widen North Carolina Highway 28. The parties reached a compromise settlement with regard to DOT's taking that provided not only for the payment of $14,050.00 to plaintiffs, but also included an agreement by DOT to build a private drive across DOT's right of way that

would connect with plaintiffs' driveway. The agreement specified that the driveway would be a "16 ft. roadbed with a maximum grade of 10%." When DOT built the driveway, the grade ranged from 13 percent to 17 percent.

Plaintiffs brought suit in Graham County Superior Court, alleging breach of contract and inverse condemnation based on DOT's failure to grade the driveway at 10 percent. On 31 January 2003, DOT moved to dismiss plaintiffs' claim for inverse condemnation. Judge Ronald K. Payne denied this motion on 13 May 2003. DOT then moved for a hearing pursuant to N.C. Gen. Stat. § 136-108 (2007) to determine "whether the Plaintiffs have had any interest or area of their property taken by the Defendant and/or whether the Plaintiffs have an inverse condemnation claim against the Defendant." On 7 September 2006, Judge Dennis J. Winner ruled that the failure of DOT to comply with its agreement to build the driveway at a grade of 10 percent or less was not a taking and dismissed plaintiffs' claim for inverse condemnation.

Plaintiffs filed a Notice of Voluntary Dismissal of their breach of contract claim on 6 September 2007 and filed a notice of appeal from Judge Winner's order on 26 September 2007. DOT has filed a motion to dismiss the appeal as untimely.

## Discussion

[1] We first address DOT's motion to dismiss. Rule 3(c)(1) of the North Carolina Rules of Appellate Procedure requires that a party file his or her notice of appeal within 30 days after entry of judgment. The trial court filed its order dismissing plaintiffs' inverse condemnation claim on 7 September 2006. The order was interlocutory because plaintiffs' contract claim remained pending. Once plaintiffs voluntarily dismissed the breach of contract claim on 6 September 2007, the trial court's order dismissing their inverse condemnation claim became a final order. *See Combs & Assocs. v. Kennedy*, 147 N.C. App. 362, 367-68, 555 S.E.2d 634, 638-39 (2001) (holding that plaintiff's voluntary dismissal of its only remaining claim after the trial court granted summary judgment to defendant on plaintiff's other claims had the effect of making the court's partial summary judgment order an appealable final order). Plaintiffs filed their notice of appeal on 26 September 2007, within 30 days after the date the trial court's dismissal order became final.

DOT argues, however, that the holding in *N.C. State Highway Comm'n v. Nuckles*, 271 N.C. 1, 155 S.E.2d 772 (1967), required plain-

tiffs to file their notice of appeal within 30 days of the trial court's ruling on 7 September 2006. In *Nuckles*, 271 N.C. at 14, 155 S.E.2d at 783, the Supreme Court held that a trial court's ruling on the issue of what land was taken during a condemnation proceeding is immediately appealable because it affects a landowner's substantial rights. The Court in that case then dismissed an appeal as untimely because the appellant waited to file notice of appeal until the trial court rendered a final judgment. *Id.* at 15, 155 S.E.2d at 784.

The Supreme Court, however, narrowed *Nuckles* in *Dep't of Transp. v. Rowe*, 351 N.C. 172, 175-76, 521 S.E.2d 707, 709-10 (1999). The Court specifically held: "[W]e now limit [the holding in *Nuckles*] to questions of title and area taken." *Id.* at 176, 521 S.E.2d at 709. The Court observed that "[a]lthough the parties to a condemnation hearing must resolve all issues other than damages at the N.C.G.S. § 136-108 hearing, that statute does not require the parties to appeal those issues before proceeding to the damages trial." *Id.*, 521 S.E.2d at 710. The landowners in *Rowe* were "the undisputed owners of the land DOT [was] seeking to condemn," and the case presented no issue regarding "what parcel of land [was] being taken or to whom that land belong[ed]." *Id.*, 521 S.E.2d at 709. Consequently, the landowners were not required to immediately appeal the trial court's ruling after the § 136-108 hearing, but rather could wait until a final judgment was entered. *Id.* at 177, 521 S.E.2d at 710. *See also N.C. Dep't of Transp. v. Stagecoach Vill.*, 360 N.C. 46, 48, 619 S.E.2d 495, 496 (2005) ("The Court of Appeals correctly read our decisions in *N.C. State Highway Comm'n v. Nuckles* and *Rowe* as holding interlocutory orders concerning title or area taken must be immediately appealed as 'vital preliminary issues' involving substantial rights adversely affected." (quoting *Rowe*, 351 N.C. at 176, 521 S.E.2d at 710)).

In this case, the order following the N.C. Gen. Stat. § 136-108 hearing did not address a question of title or area taken. Plaintiffs are the undisputed owners of the property, and the parties agree regarding what area is in dispute. The sole question was whether there was any taking at all. Based on *Rowe*, plaintiffs were not required to immediately appeal the trial court's ruling that DOT's failure to build a driveway at a 10 percent grade was not a taking. We, therefore, deny DOT's motion to dismiss plaintiffs' appeal.

[2] Turning to the merits of plaintiffs' appeal, *Rowe* pointed out that "[p]arties to a condemnation proceeding must resolve all issues other than damages at a hearing pursuant to N.C.G.S. § 136-108." 351 N.C. at 175, 521 S.E.2d at 709. N.C. Gen. Stat. § 136-108 provides:

After the filing of the plat, the judge, upon motion and 10 days' notice by either the Department of Transportation or the owner, shall, either in or out of term, hear and determine *any and all issues raised by the pleadings other than the issue of damages,* including, but not limited to, if controverted, questions of necessary and proper parties, title to the land, interest taken, and area taken.

(Emphasis added.) Following the hearing in this case, Judge Winner concluded that "[t]he failure of the Defendant to comply with its agreement to build the driveway at 10 percent or less is not a taking of property within the laws of the State of North Carolina" and that "[t]he Plaintiffs are not entitled therefore to proceed with respect to the remedy of an inverse condemnation."

In *Ledford v. N.C. State Highway Comm'n,* 279 N.C. 188, 190-91, 181 S.E.2d 466, 468 (1971) (quoting 26 Am. Jur. 2d *Eminent Domain* § 157 (1966)), the Supreme Court held:

" 'Taking' under the power of eminent domain may be defined generally as entering upon private property for more than a momentary period and, under the warrant or color of legal authority, devoting it to a public use, or otherwise informally appropriating or injuriously affecting it in such a way as substantially to oust the owner and deprive him of all beneficial enjoyment thereof."

This Court applied this principle in *Dep't of Transp. v. Higdon,* 82 N.C. App. 752, 347 S.E.2d 868 (1986), *appeal dismissed and disc. review denied,* 318 N.C. 692, 351 S.E.2d 742 (1987).

In *Higdon,* DOT had condemned a portion of the defendants' property in order to widen a street. As part of the widening construction, DOT, without the defendants' permission, resloped and repaved a parking lot at the front of the defendants' property, making the area steeper, rendering the front parking lot useless, and requiring the defendants to build a retaining wall and add steps to the front of their building. *Id.* at 753, 347 S.E.2d at 869. The defendants argued that this regrading of the front parking lot constituted an additional taking. This Court rejected the defendants' contention, explaining, based on the definition in *Ledford,* that "[i]n no way was this additional area devoted to a public use and defendants were neither substantially ousted nor deprived of all beneficial enjoyment of the area in question by the mere regrading of the property." *Id.* at 754, 347 S.E.2d at 869.

We believe *Higdon* is materially indistinguishable from this case. As the trial court found, DOT built a driveway across its right of way that attached to plaintiffs' private driveway, but was steeper than the parties had agreed upon. As in *Higdon*, the area at issue—the driveway—was not devoted to public use, and plaintiffs in this case do not contend that they were ousted or deprived of beneficial enjoyment of their property.

Plaintiffs argue nonetheless that a taking occurred under the reasoning of *Lea Co. v. N.C. Bd. of Transp.*, 308 N.C. 603, 621, 304 S.E.2d 164, 176 (1983), because the value of their property decreased as a result of the steeper slope to their driveway. In *Lea*, the Court addressed "whether an easement for flooding was taken from the plaintiff by the defendant, a State agency." *Id.* at 607, 304 S.E.2d at 169. The State and the plaintiff in that case had entered into an agreement regarding the condemnation of a portion of the plaintiff's property in connection with highway improvements. Certain structures built for those improvements subsequently caused flooding of the plaintiff's property and were likely to lead to periodic future flooding.

The Supreme Court held that "[i]n order to recover for a taking in the present case, the plaintiff must additionally show that the defendant's structures caused an actual permanent invasion of the plaintiff's land or a right appurtenant thereto." *Id.* at 618, 304 S.E.2d at 175. In concluding that the plaintiff had met its burden, the Court stated:

> In the present case the evidence tended to show that the structures built and maintained by the defendant caused increased flooding and substantial injury to the plaintiff's relatively high density apartments in an urban area. The highway structures built and maintained by the defendant which were found to have directly caused the increased flooding were permanent in nature. In light of this evidence, the trial court did not err in concluding that the increased flooding directly resulting from the defendant's structures was a permanent invasion of the plaintiff's property and a taking by the State.

*Id.* at 620-21, 304 S.E.2d at 176 (internal citation omitted).

The Supreme Court's decision in *Lea* does not support plaintiffs' contention that a taking has occurred because the steeper grade of the drive "resulted in Plaintiffs' remaining land being less valuable than it would have been had the reconstructed drive and its recon-

nection to Defendant's land been completed as agreed." While, in *Lea*, DOT's actions substantially impaired the value of the owner's land because they caused it to be flooded every time the area experienced a hard rain, plaintiffs in this case have only alleged that DOT's actions have not improved the value of their land to the degree they expected under the agreement.

Accordingly, we hold *Higdon* controls the disposition of this appeal. Because plaintiffs failed to prove at trial and failed to argue on appeal that the increased slope of the new driveway substantially deprived them of the use of their land, as required in *Higdon* and *Ledford,* the trial court did not err in concluding that there was no taking. The trial court's dismissal of plaintiffs' claim for inverse condemnation is, therefore, affirmed.

Affirmed.

Judges STEELMAN and STEPHENS concur.