TOWN OF APEX, PLAINTIFF v. ANN SLOAN WHITEHURST, INDIVIDUALLY, AS CO-EXECUTRIX OF THE ESTATE OF BEULAH CORBETT SLOAN AND AS TRUSTEE; ROBERTA SLOAN LITTLE; INDIVIDUALLY, AS CO-EXECUTRIX OF THE ESTATE OF BEULAH CORBETT SLOAN AND AS TRUSTEE; MEREDITH LYNN WHITEHURST; SHELLEY ANN WHITEHURST; STEPHEN B. LITTLE; DAVID K. WHITEHURST; AND WAKE COUNTY, DEFENDANTS

No. COA10-697

(Filed 19 July 2011)

**1. Appeal and Error— interlocutory orders and appeals—substantial right—taking for public purpose—untimely appeal**

Although defendants' appeal in a condemnation case regarding the issue of taking for a public purpose was from an interlocutory order that affected a substantial right, it was dismissed as untimely.

**2. Appeal and Error— interlocutory orders and appeals—substantial right—inverse condemnation—untimely appeal**

> Although defendants' counterclaim for inverse condemnation was from an interlocutory order that affected a substantial right, it was dismissed as untimely.

**3. Appeal and Error— preservation of issues—failure to argue**

> Defendants failed to make any arguments regarding the 17 February 2010 order as required by N.C. R. App. P. 28(a), and thus, the issues were deemed abandoned.

Appeal by defendants from orders entered 10 February 2009 by Judge Ripley E. Rand, 19 November 2009 by Abraham Penn Jones, and 17 February 2010 by Judge Donald W. Stephens in Superior Court, Wake County. Heard in the Court of Appeals 30 November 2010.

*Smith Moore Leatherwood LLP, by Marc C. Tucker, for the plaintiff-appellee.*

*Creech Law Firm, P.A., by Peter J. Sarda, for the defendant-appellants.*

STROUD, Judge.

Defendants appeal three orders regarding the condemnation of their land. As defendants' appeal is untimely, we dismiss the appeal.

## I. Background

Plaintiff, the Town of Apex ("Apex"), brought this condemnation action pursuant to "Article 9 of Chapter 136 of the North Carolina General Statutes"[1] because it was "necessary to condemn and appropriate" the property of defendants "for public use in the construction of a certain gravity sewer line project[.]" The parties were "unable to agree as to the purchase price of the property . . . appropriated[,]" and thus Apex requested the Court to determine "just compensation for the appropriation[.]"

---

1. Apex's brief notes that "[t]he Town has the option to exercise its condemnation power under N.C. Gen. Stat. § 40A-3 [App. pp. 4-9], which grants such authority to 'local public condemnors.' *Id. See also* N.C. Gen. Stat. § 40A-1(a) [App. p. 3]. By virtue of an amendment to its charter in 1987 by the General Assembly, S.L. 1987-70 [App. p. 23], codified as amended as § 6.5 of the Apex Town Charter [App. p. 22], the Town may also exercise such power under Chapter 136, Article 9. The Town instituted this action under Chapter 136. (R p 12). Defendant-appellants have not challenged the Town's authority to proceed under Chapter 136."

On or about 25 July 2008, defendants moved to dismiss Apex's complaint, answered Apex's complaint, and counterclaimed for a declaration that Apex's taking would result "in a total taking of the property and that an inverse condemnation ha[d] occurred."[2] Defendants claimed the taking would "destroy the use and effect of the entire property" because

> [t]he Plaintiff's efforts to plant sewer lines across the Defendants['] property will harvest an artificial, barren ridge across the Defendant[s'] otherwise pristine forest and thus destroy the natural effect of a Sylvan refuge and thus damage the natural effect of the entire tract.

> 4. Because the plans of the Plaintiff to take only a portion of the Defendants' property will result in an un-desired subdivision of an otherwise untouched forest, the Plaintiff's actions will result in a total taking of the Defendants['] property.

Defendants requested "damages for taking the entire property." On or about 21 August 2008, Apex answered defendants' counterclaim, moved to dismiss defendants' counterclaim, "requested a hearing to determine all issues other than just compensation[,]" and argued that defendants' counterclaim was barred by laches.

On 21 October 2008, defendants filed an amended motion for summary judgment based on "whether this condemnation action is for a public purpose." On 10 February 2009, the trial court entered an order allowing Apex's motion for summary judgment[3] and denying defendant's motion for summary judgment because Apex's "intended use of the property at issue satisfies both the 'public use' and the 'public benefit' tests[.]" On 19 November 2009, the trial court granted Apex's motion to dismiss defendants' counterclaim.

---

2. We note that defendants' counterclaim for inverse condemnation was not filed in accordance with N.C. Gen. Stat. § 136-111, as defendants failed to allege a claim under N.C. Gen. Stat. § 136-111 or to file a memorandum of action and would be subject to dismissal for this reason alone. *See generally Cape Fear Pub. Util. Auth. v. Costa,* —— N.C. App. ——, 697 S.E.2d 338, 342 (2010) ("Although [the] Defendant alleged in his counterclaim that he 'specifically pleads the law of Inverse Condemnation,' he completely failed to comply with the requirements of N.C. Gen. Stat. § 40A-51, both in the allegations of the counterclaim and by his failure to file a memorandum of action. . . . Defendant's counterclaim for inverse condemnation was thus subject to dismissal for its failure to comply with N.C. Gen. Stat. § 40A-51." (brackets omitted)). However, we do not address defendants' appeal regarding their counterclaim for inverse condemnation as we conclude that it was untimely.

3. Apex made an oral motion for summary judgment before the trial court at the hearing on defendants' motion for summary judgment.

On 22 June 2010, Apex filed a "MOTION FOR DETERMINATION OF ISSUES OTHER THAN DAMAGES" pursuant to N.C. Gen. Stat. § 136-108 ("motion for determination") requesting the trial court to determine:

a. Whether or not the Town of Apex's easement, as set forth in its Complaint, constitutes a taking of the entire tract; and

b. Whether or not the jury shall hear and determine the claims for compensation made by the Defendants because of the taking.

On 17 February 2010, after a hearing regarding Apex's motion for determination, the trial court determined that Apex had "condemned an easement constituting a partial taking[;]" thus rejecting defendants' claim that the easement would in effect take the entire property as alleged by defendants' dismissed counterclaim for inverse condemnation. Defendants appeal the 10 February 2009 order, the 19 November 2009 order, and the 17 February 2010 order.

## II. 10 February 2009 Order

[1] Defendants' first two arguments are that Apex's condemnation was actually for private use, not public use. The trial court's initial determination that the condemnation was for public use was made in the 10 February 2009 order.

According to *Progress Energy Carolinas, Inc. v. Strickland,*

> [w]e first consider whether [the] appeal in this case is an interlocutory appeal requiring dismissal. A ruling is interlocutory if it does not determine the issues but directs some further proceeding preliminary to final decree.

181 N.C. App. 610, 612, 640 S.E.2d 856, 858 (2007) (citation and quotation marks omitted). Here, the 10 February 2009 order determined that the purpose of the taking was for public use and left all other issues regarding the condemnation proceeding pending; accordingly, the 10 February 2009 order was interlocutory. *See id.*

> There is generally no right to appeal an interlocutory order. However, a party may appeal an interlocutory order that affects some substantial right claimed by the appellant and will work an injury to him if not corrected before an appeal from the final judgment. The Supreme Court recognized in *N.C. State Highway Comm'n v. Nuckles*, 271 N.C. 1, 155 S.E.2d 772 (1967) that orders from a condemnation hearing concerning title and area taken are vital preliminary issues that must be immediately appealed pur-

suant to N.C.G.S. § 1-277, which permits interlocutory appeals of determinations affecting substantial rights.

The Supreme Court defined the concept of vital preliminary issues in two eminent domain cases, *Nuckles* and *Rowe*. The issue before the Court in *Nuckles* was which tracts the State Highway Commission was taking by eminent domain. When considering whether this was a vital preliminary issue, the Court noted:

> Obviously, it would be an exercise in futility to have the jury assess damages to tracts 1, 2, 3, and 4 if plaintiff were condemning only tracts A and B, and the verdict would be set aside on appeal for errors committed by the judge in determining the issues other than damages.

By contrast, in *Rowe* the landowners appealed the issue of the unification of four of their tracts through condemnation. The Court noted: Defendants contest only the unification of the four remaining tracts, not what parcel of land is being taken or to whom that land belongs. Thus, we hold that the trial court's interlocutory order does not affect any substantial right of these defendants. The Court went on to limit the *Nuckles* holding to questions of title and area taken.

> Applying this vital preliminary issue analysis to the case before us, the order is immediately appealable if it decided questions of title or area taken.

*Id.* at 612-13, 640 S.E.2d at 858-59 (citation, quotation marks, and ellipses omitted).

We are unaware of any prior North Carolina case which has considered whether the issue of the purpose of a taking is a vital or nonvital "preliminary issue[.]"[4] *Id.* While *Progress Energy Carolinas* notes that *Rowe* limited *Nuckles* "to questions of title and area taken[,]" we note "questions of title and area taken" are possible only after a taking has occurred. *See id.* In other words, once a condemnor files a condemnation action which creates a taking, the trial court must consider the extent of the taking, including issues such as the title and the specific area involved, before a jury may determine com-

---

4. This case is distinguishable from *DeHart v. N.C. Dep't. of Transp.*, 195 N.C. App. 417, 420, 672 S.E.2d 721, 723 (2009) which provided that "[t]he sole question was whether there was any taking at all" because in *Dehart* "[t]he parties reached a compromise settlement with regard to DOT's taking[.]" *See id.* at 418, 672 S.E.2d at 722. Accordingly in *Dehart*, the parties had previously agreed that there had been a taking. *See id.* The issue actually addressed in *Dehart* was the DOT's alleged failure to comply with the compromise settlement. *See id.*, 195 N.C. App. 417, 672 S.E.2d 721.

pensation for the taking. We are confronted here with the preliminary issue of whether a taking has even occurred, since Apex has no power to condemn property for a private purpose or use.

> "[T]aking" under the power of eminent domain may be defined as entering upon private property for more than a momentary period, and, under warrant or color of legal authority, *devoting it to a public use,* or otherwise informally appropriating or injuriously affecting it in such a way as substantially to oust the owner and deprive him of all beneficial enjoyment thereof.

*Penn v. Coastal Corp.,* 231 N.C. 481, 484, 57 S.E.2d 817, 819 (1950) (emphasis added) (citation and quotation marks omitted). By its very definition, a "taking" can only occur if an entity with the power of eminent domain appropriates property which is to be devoted "to a public use[.]" *Id.*

> [I]t has long been accepted that the sovereign may not take the property of A for the sole purpose of transferring it to another private party B, even though A is paid just compensation. On the other hand, it is equally clear that a State may transfer property from one private party to another if future "use by the public" is the purpose of the taking; the condemnation of land for a railroad with common-carrier duties is a familiar example . . . .
>
>     . . . [T]he City would no doubt be forbidden from taking petitioners' land for the purpose of conferring a private benefit on a particular private party. Nor would the City be allowed to take property under the mere pretext of a public purpose, when its actual purpose was to bestow a private benefit.

*Kelo v. New London,* 545 U.S. 469, 477-78, 162 L. Ed. 2d 439, 450 (2005) (footnote omitted). If Apex attempted to condemn the defendants' property for a private use, then the use would be improper and Apex would have no authority to take the property under the power of eminent domain, thus ending the inquiry. *See id.* But if Apex condemned defendants' property for public use, this would be an appropriate exercise of its power of eminent domain, and thus a "taking," *see id.,* so that other issues, such as title or area taken, could then be addressed in order to determine the extent of the taking before compensation is considered. Accordingly, whether Apex is appropriating the property for private or public use is of vital importance as it determines whether Apex may exercise its power of eminent domain. *See id.*

As we have concluded that the determination of whether a taking is for a public purpose is an inquiry of vital importance in condemna-

tion cases, such questions affect a substantial right and are immediately appealable. *See Progress Energy Carolinas*, 181 N.C. App. at 612-13, 640 S.E.2d at 858. As such, appeal must be filed within 30 days of entry of the order which determines the purpose of the taking. *See* N.C.R. App. P. 3(c)(1).

> In civil actions and special proceedings, a party must file and serve a notice of appeal:
>
> (1) within thirty days after entry of judgment if the party has been served with a copy of the judgment within the three day period prescribed by Rule 58 of the Rules of Civil Procedure[.]

*Id.*

The "Certificate of Service" signed by the Deputy Clerk of Superior Court, Nancy H. Vann, states that a copy of the 10 February 2009 order was deposited in the mail on 11 February 2009. Defendants did not file a notice of appeal from the 10 February 2009 order until 2 March 2010; accordingly, defendants' appeal is untimely, see *id.*, and thus we dismiss any review of the 10 February 2009 order. *See Concrete Mach. Co. v. City of Hickory*, 134 N.C. App. 91, 96-97, 517 S.E.2d 155, 158-59 (1999) (noting defendant was "precluded from raising . . . issue on appeal" because defendant failed to appeal within 30 days of interlocutory order which determined that a taking had occurred and affected a substantial right); *see also Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 197-98, 657 S.E.2d 361, 365 (2008) (explaining that failure to comply with Rule 3 of the North Carolina Rules of Appellate Procedure results in a jurisdictional default which requires this Court to dismiss the appeal and even precludes review pursuant to North Carolina Rule of Appellate Procedure 2).

### III. 19 November 2009 Order

[2] Although we have dismissed defendants' appeal as to the issue of taking for a public purpose, the 19 November 2009 order raises a different issue. Defendants' next two arguments are that the trial court erred in dismissing their counterclaim for inverse condemnation which was based upon defendants' allegation that the taking of the sewer easement created a total taking of the defendants' property. The 19 November 2009 order is also interlocutory as it does not dispose of all of the issues before the trial court. *Progress Energy Carolinas*, 181 N.C. App. at 612, 640 S.E.2d at 858.

The question of whether the taking was total or partial is a vital issue as it deals with the extent of the taking, *i.e.*, the "area taken[.]" *Id.*, 181 N.C. App. at 613, 640 S.E.2d at 858-59; *compare Dep't of Transp. v. Mahaffey*, 137 N.C. App. 511, 515-16, 528 S.E.2d 381, 384 (2000) (determining that where the defendants' inverse condemnation claim was based upon the issue of whether "they had . . . been offered just compensation for the alleged taking of their property" . . . it "did not relate to title or area taken[, and] . . . thus, [the defendants] are not barred from raising these issues in this appeal" (quotation marks omitted)). As defendants' appeal relates to the "area taken[,]" the 19 November 2009 order was also immediately appealable. *See Progress Energy Carolinas*, 181 N.C. App. at 613, 640 S.E.2d at 859. "[I]t would be an exercise in futility[,]" *Highway Comm'n v. Nuckles*, 271 N.C. 1, 14, 155 S.E.2d 772, 784 (1967), for a jury to consider evidence as to the value of the taking of only a 30 foot wide sewer easement crossing the defendants' real property instead of evidence as to the value of the taking of the entire tract of approximately 48 acres, if in fact Apex had appropriated the entire tract.

The "Certificate of Service" for the 19 November 2009 order, also signed by the Deputy Clerk of Superior Court, Nancy H. Vann, states that a copy of the order was deposited in the mail on 19 November 2009. Defendant's notice of appeal was not filed until 2 March 2010. Accordingly, defendant's appeal as to the 19 November 2009 order is untimely, *see* N.C.R. App. P. 3(c)(1) and we must dismiss it. *See Dogwood Dev. & Mgmt. Co*, 362 N.C. at 197-98, 657 S.E.2d 361, 365.

## IV. 17 February 2010 Order

[3] Defendants failed to make any arguments regarding the 17 February 2010 order. Accordingly, we will not review this order. *See* N.C.R. App. P. 28(a) ("The scope of review on appeal is limited to issues so presented in the several briefs. Issues not presented and discussed in a party's brief are deemed abandoned.")

## V. Conclusion

As defendants failed to make a timely appeal, we dismiss this appeal.

DISMISSED.

Judges BRYANT and BEASLEY concur in result only.