IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA17-498

 Filed: 3 July 2018

Dare County, No. 11-CVS-304

TOWN OF NAGS HEAD, Plaintiff,

 v.

RICHARDSON, et al., Defendants.

 Appeal by Defendants from Judgment Notwithstanding the Verdict entered 17

October 2016 by Judge Gary E. Trawick in Dare County Superior Court. Cross-

appeal by Plaintiff from orders entered 17 December 2014 and 25 August 2015 by

Judge Gary E. Trawick in Dare County Superior Court. Heard in the Court of

Appeals 16 November 2017.

 Hornthal, Riley, Ellis & Maland, LLP, by Benjamin M. Gallop and M. H. Hood
 Ellis, for Plaintiff.

 Nexsen Pruet, by Norman W. Shearin, for Defendants.

 INMAN, Judge.

 This appeal, following a jury verdict for property owners and entry of judgment

notwithstanding the verdict (“JNOV”), presents an issue of first impression: whether

a municipality that takes an easement in privately owned oceanfront property to

replenish the beach can avoid compensating the private property owner by asserting

public trust rights vested in the State. On the record before us, we hold that the
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

property owner is entitled to compensation as provided by the eminent domain

statute.

 We also hold that the jury’s verdict was supported by a scintilla of evidence

and reverse the trial court’s entry of JNOV. But because expert testimony supporting

the verdict was admitted in error, we remand for a new trial.

 Defendants William W. Richardson and Martha W. Richardson (the

“Richardsons”) appeal the entry of JNOV that set aside a jury verdict of $60,000.00

compensating them for an easement taken by the Town of Nags Head (the “Town”)

through eminent domain. The Town took the easement across a portion of the

Richardsons’ property to complete a beach nourishment project. In entering the

JNOV, the trial court concluded that the Richardsons were entitled to no

compensation, reasoning that: (1) the land subject to the easement was encumbered

by public trust rights, so the easement was already implied in favor of the Town to

protect and preserve those public trust rights; and (2) in the event the easement was

not already implied and thus constituted a compensable taking, the Richardsons

failed to introduce evidence supporting the jury’s verdict based on the fair market

value of the temporary easement. The Town cross-appeals the denial of its motions

in limine seeking to exclude testimony by the Richardsons’ expert witnesses. We

reverse both entry of JNOV and denial of the motions in limine and remand for new

trial.

 2
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

 I. FACTUAL AND PROCEDURAL HISTORY

 In early 2011, the Town undertook a beach nourishment project along ten miles

of its coastline to combat erosion and improve flood and hurricane protections. The

Town mailed a notice of condemnation to owners of oceanfront property along the

affected coastline, including the Richardsons. In the notice, the Town informed

private property owners of the purposes of the project and asked them to grant the

Town an easement across the sand beach portion of their properties. Specifically, the

Town requested the following:

 The property on which the Town will need to work lies
 waterward of the following locations, whichever is most
 waterward: the Vegetation Line; the toe of the Frontal
 Dune or Primary Dune; or the Erosion Escarpment of the
 Frontal Dune or Primary Dune.

 ...

 Please be aware that this is not a perpetual easement; the
 Town only requests that it have the easement rights
 through April 1, 2021.

 You will not lose land or access rights if you sign the
 easement. We are simply asking for your approval to
 deposit sand and work on a specific section of your property
 on one or perhaps more occasions, during a ten year period.
 Except for the brief periods when construction or repairs
 are ongoing, you will still be able to access the beach from
 your property and construct a dune walkover . . . .

 At the outset of the nourishment project, a survey will be
 conducted to establish the existing mean high water line,
 which is currently your littoral property line and will
 remain your property line after the project. . . . As set forth

 3
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

 on the enclosed Notice, the Town may need to enter the
 beach in front of your property.

The notice also included this rendering, which identifies the portion of beach subject

to the requested easement and the Town’s understanding of related rights and

interests:

Finally, the notice stated that the Town would bring a condemnation action to take,

by eminent domain, the easement rights requested in the notice if no voluntary grant

of the easement was executed.

 The Richardsons did not grant the Town the easement rights requested in the

notice and, on 28 March 2011, the Town filed a condemnation action. The Town

sought the following easement rights (the “Easement Rights”) in the Richardsons’

 4
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

dry-sand beach property lying between the toe of the dune and the mean high water

mark (the “Easement Area;” together with the Easement Rights as the “Easement”):

 The Town, its agents, successors and assigns may use the
 Easement Area to evaluate, survey, inspect, construct,
 preserve, patrol, protect, operate, maintain, repair,
 rehabilitate, and replace a public beach, a dune system,
 and other erosion control and storm damage reduction
 measures together with appurtenances thereof, including
 the right to perform the following on the property taken:

  deposit sand together with the right of public use
 and access over such deposited sand;
  accomplish any alterations of contours on said land;
  construct berms and dunes;
  nourish and renourish periodically;
  perform any other work necessary and incident to
 the construction, periodic Renourishment and
 maintenance of the Town’s Beach Nourishment
 Project . . . .

Consistent with the Town’s earlier notice, the Easement terminates on 1 April 2021.

 The Richardsons filed an answer and motion to dismiss in response to the

complaint. On 20 July 2011, the trial court entered a consent order denying the

Richardsons’ motion to dismiss, vesting title to the Easement in the Town as of the

date the complaint was filed pursuant to Section 40A-42 of our General Statutes, and

continuing all other hearings authorized by statute until after the Town deposited

sand on the beach and Easement Area as part of the nourishment project. The action

was then designated an exceptional case and assigned for all purposes to a single

superior court judge.

 5
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

 In 2014, after the nourishment project was completed, Judge Gary Trawick

presided over a hearing pursuant to Section 40A-47 on all issues other than damages.

By order entered 17 December 2014 (the “40A-47 Order”), Judge Trawick decreed

that: (1) the area affected by the taking of the Easement was the Richardsons’ entire

lot consisting of 30,395.2 square feet; (2) the property taken, i.e., the Easement Area,

was approximately 7,280.54 square feet of beach lying between the toe of the dune

and the mean high water mark at the time of condemnation; and (3) the rights taken

were those described in the Town’s complaint.1 Judge Trawick denied a motion by

the Town requesting a ruling that the Easement Area, or any portion of it, was subject

to public trust rights.

 The damages issue was scheduled for trial before a jury in August 2015. In

pre-trial motions, both parties raised the issue of the public trust doctrine. After

reviewing the issue further, Judge Trawick continued the trial and entered an order

revising the 40A-47 Order (the “Revised 40A-47 Order”).

 The Revised 40A-47 Order concluded that the entire Easement Area was

located within the State’s “ocean beaches” as defined in N.C. Gen. Stat. § 77-20(e)

 1 The Richardsons present several arguments concerning various other rights that they
contend were taken by the Town, including littoral rights, secondary easement access rights vesting
in the Town, and a complete loss of title to the Easement Area. None of these rights falls within the
ambit of the taking declared in the 40A-47 Order, nor do we need to address their compensability.
Resolution of the Richardsons’ appeal concerns only whether: (1) public trust rights preclude recovery
of damages; and (2) the Richardsons presented evidence sufficient to support the jury’s verdict.

 6
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

(2015), and therefore was subject to public trust rights as described in N.C. Gen. Stat.

§ 1-45.1.2 The Revised 40A-47 Order provided both parties with the opportunity to

seek new appraisals in light of Judge Trawick’s ruling. Judge Trawick certified the

Revised 40A-47 Order for immediate appeal pursuant to Rule 54(b) of the North

Carolina Rules of Civil Procedure, but neither party noticed an appeal.

 In advance of the trial on damages, the Town filed motions in limine seeking

to exclude testimony by two appraisers hired by the Richardsons, Gregory Bourne

(“Mr. Bourne”) and Dennis Gruelle (“Mr. Gruelle”). The trial court prohibited all

expert witnesses from testifying to opinions not disclosed prior to or at the time of

their respective depositions. The trial court otherwise denied the motions.

 At trial, Messrs. Bourne and Gruelle provided testimony and portions of their

written appraisal reports were published to the jury. Mr. Bourne’s report and

testimony asserted that the taking had diminished the fair market value of the

remainder of the Richardsons’ property by $160,000. Mr. Gruelle’s report and

testimony asserted that the taking had diminished the value of the remainder of the

Richardsons’ property by $233,000.00.

 2 This Court would later reach the same holding as that decreed by Judge Trawick in his
Revised 40A-47 Order. See Nies v. Town of Emerald Isle, 244 N.C. App. 81, 92–93, 780 S.E.2d 187,
196–97 (2015) (holding that N.C. Gen. Stat. § 77-20 and the common law vest in the State public trust
rights in “ocean beaches” as measured on the landward side by the more seaward of the toe of the
frontal dune or the first vegetation line; where neither exists, it is measured by the storm trash line
“or any other reliable indicator of the mean regular extent of the storm tide”).

 7
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

 Mr. Bourne testified that, in valuing only the land constituting the

Richardsons’ entire lot, he first determined the “[h]ighest and best use[, which] is that

use which you can physically and possibly build that is legally permissible, that is

financially feasible, and that reflects the maximum value, that will generate the

maximum value of the property.” After determining the best and highest use of the

Richardsons’ entire lot to be residential, he employed sales comparison and cost

approaches to reach a “before [taking] land value [of] $855,000.” After including the

improvements to the property and other adjustments, Mr. Bourne arrived at a pre-

taking value of the improved lot of $1,040,000.

 To determine the impact of the Easement taking on the fair market value of

the Richardsons’ lot, Mr. Bourne reviewed comparable sales and found an eight

percent difference in the value of oceanfront lots that extended all the way to the

mean high water mark and beachfront lots that stopped short of the ocean. He made

this comparison because, per Section 146-6(f), title to new land seaward of the former

mean high water mark created by the nourishment project would vest in the State.3

The Town’s use of the Easement, therefore, affixed the Richardsons’ property line at

the former mean high water mark and created a strip of State-owned land between

the Richardsons’ property line and the ocean. After considering damage to the

 3Section 146-6(f) provides, in relevant part: “title to land in or immediately along the Atlantic
Ocean raised above the mean high water mark by publicly financed projects which involve hydraulic
dredging or other deposition of spoil materials or sand vests in the State.” N.C. Gen. Stat. § 146-6(f)
(2017).

 8
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

unencumbered portion of the lot, Mr. Bourne testified that the proper measure of

damages was “[t]he difference between the before and the after [fair market values of

the Richardsons’ property] and I came up with $160,000.” Applying his calculation

to the entire lot’s unimproved value of $855,000, Mr. Bourne “came up with an after

the taking land value, that is the value of the land now encumbered by this easement

for 10 years, of $70,000.”

 The Richardsons’ other appraiser, Mr. Gruelle, testified that the highest and

best use of the Richardsons’ lot was residential and, after comparing sales of similar

properties, concluded that “the value of the site was [$]880,000. . . . [$]880,000 is

attributable to the value of the land.”

 Taking the $880,000 value of the entire lot with its highest and best use as

residential property, Mr. Gruelle calculated a value of $28.95 per square foot. He

then multiplied that number by the total square footage of the Easement Area, 7,280,

and arrived at a total value of $210,756 for the Easement Area. Mr. Gruelle

estimated that, based on the Easement Rights taken, the Town’s use of the Easement

Area for ten years exploited 90 percent of its land value; as a result, Mr. Gruelle

testified that the value of the Easement taken was approximately $190,000.4 Mr.

Gruelle combined the Easement value with other negative impacts on the

unencumbered property—including the effect on the view and ease of beach access

 4 By mathematical formula, Mr. Gruelle calculated the value of the Easement as follows:
(($28.95/ft2) * 7,280ft2) * 0.9 = $189,680.4.

 9
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

resulting from the increased height of the dunes—to which he assigned a value of

$43,000, and opined that “the total impact of the property is $233,000. . . . That is

the just compensation to leave the property owner whole.”

 At the close of the Richardsons’ evidence, the Town moved for directed verdict.

Reasserting the grounds raised in its motions in limine, the Town argued that

Messrs. Bourne’s and Gruelle’s valuations were unreliable and should be stricken; if

that evidence were stricken, the Richardsons would have failed to prove damages,

and the Town would be entitled to a directed verdict. The trial court denied the

motion.

 Michael Moody, an expert witness for the Town, provided an opinion on two

distinct fair market values: (1) the difference in fair market value of the Richardsons’

entire lot before the taking and the remainder after the taking under the “before and

after method;” and (2) the fair market value of the Easement. Mr. Moody determined

the difference in total market value to be zero and determined the fair market value

of the Easement to be $330. He arrived at the second number through the “market

extraction” method, whereby he found two comparable vacant oceanfront lot sales,

one encumbered by a permanent easement for beach nourishment and one

unencumbered. Mr. Moody then calculated the difference in those sale prices, which

came out to $1,000, and attributed that difference to the presence of the permanent

easement. Because the Easement in this case was for a ten-year period rather than

 10
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

perpetual in duration, he reduced the extracted amount by two-thirds and arrived at

a fair market value of $330 for the Town’s taking.

 The Town renewed its earlier motion for directed verdict at the close of its

evidence, and the motion was denied. Following instruction by Judge Trawick and

deliberations, the jury returned a verdict finding that the fair market value of the

Easement was $60,000, and the difference in fair market value of the Richardsons’

property pre-taking and the remainder post-taking was zero. The jury awarded the

Richardsons $60,000 as the greater value.

 The Town timely filed a motion for JNOV, arguing, among other things, that

the Richardsons had failed to introduce evidence showing the fair market value of the

Easement. Joined in the motion for JNOV was a motion for new trial and a motion

for remittitur. Neither motion was ruled on by the trial court.

 Eight months later, following a hearing and additional briefing, Judge Trawick

entered JNOV in favor of the Town, declaring that the Richardsons should recover

nothing. Judge Trawick identified two bases for his ruling: (1) there was no

compensable taking, as the Town already possessed an easement by implication to

protect and preserve the State’s ocean beaches by virtue of the State’s public trust

rights; and (2) in the event there was a compensable taking, there was no evidence

 11
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

from which the jury could find a fair market value of the Easement,5 so the only

available calculation of damages was the “before and after” value of the

unencumbered property. Because the jury found that value to be $0, that was the

proper amount of damages.

 The Richardsons appealed the JNOV; the Town cross-appealed the 40A-47

Order and Judge Trawick’s denial of its motions in limine.

 II. DISCUSSION

 The Richardsons contend that the trial court erred in entering JNOV on

grounds not asserted in the Town’s motions for directed verdict and despite relevant

evidence, provided by Mr. Gruelle, to support the jury verdict. We agree and reverse

the entry of JNOV. However, we also agree with the Town that the trial court abused

its discretion in admitting Mr. Gruelle’s expert testimony over the Town’s motions in

limine and objections. As a result, we remand the case for a new trial.

A. Standard of Review

 We review the entry of JNOV de novo, substituting our judgment for that of

the trial court. Austin v. Bald II, L.L.C., 189 N.C. App. 338, 342, 658 S.E.2d 1, 4

(2008). In exercising that judgment, we ask “whether the evidence was sufficient to

go to the jury,” Tomika Invs., Inc. v. Macedonia True Vine Pentecostal Holiness

 5 This conclusion contradicts the trial court’s earlier conclusion in the same order that
“competent expert testimony introduced at trial on the . . . market value of the [Easement shows a]
$330.00 market value . . . .”

 12
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

Church of God, Inc., 136 N.C. App. 493, 499, 524 S.E.2d 591, 595 (2000), and “[t]he

essential question is whether the [non-movant] met his burden at trial of presenting

substantial evidence of his claim when all the evidence is taken in the light most

favorable to the [non-movant] and all inconsistencies are resolved in favor of the [non-

movant].” Asfar v. Charlotte Auto Auction, Inc., 127 N.C. App. 502, 504, 490 S.E.2d

598, 600 (1997). “The hurdle is high for the moving party [on JNOV] as the motion

should be denied if there is more than a scintilla of evidence to support the [non-

movant’s] prima facie case.” Tomkia Invs., 136 N.C. App. at 499, 524 S.E.2d at 595

(citations omitted). However, JNOV is proper “when the evidence is insufficient as a

matter of law to support the verdict.” Beal v. K. H. Stephenson Supply Co., Inc., 36

N.C. App. 505, 507, 244 S.E.2d 463, 465 (1978). Critically, we are concerned only

with the evidence’s relevancy and probative value, as opposed to its admissibility, on

review of JNOV. See, e.g., Bishop v. Roanoke Chowan Hosp., Inc., 31 N.C. App. 383,

385, 229 S.E.2d 313, 314 (1976) (“All relevant evidence admitted by the trial court,

whether competent or not, must be accorded its full probative force in determining

the correctness of its ruling upon a motion for [JNOV.]” (citation and quotation marks

omitted) (emphasis added)).

B. Public Trust Doctrine

 The public trust doctrine, established by the common law of this State, involves

two concepts: (1) public trust lands, which are “certain land[s] associated with bodies

 13
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

of water [and] held in trust by the State for the benefit of the public[;]” and (2) public

trust rights, which are “those rights held in trust by the State for the use and benefit

of the people of the State in common.” Fabrikant v. Currituck Cty., 174 N.C. App. 30,

41, 621 S.E.2d 19, 27 (citation and internal quotation marks omitted) (2005); see also

Nies v. Town of Emerald Isle, 244 N.C. App. 81, 88, 780 S.E.2d 187, 194 (2015) (“This

Court has recognized both public trust lands and public trust rights as codified by our

General Assembly[.]” (emphasis added)). Public trust lands include “the

watercourses of the State and . . . the State’s ocean and estuarine beaches[,]”

Fabrikant, 174 N.C. App. at 41, 621 S.E.2d at 27 (citation and internal quotation

marks omitted), regardless of whether they are publicly or privately owned. Nies,

244 N.C. App. at 93, 780 S.E.2d at 196–97. Public trust rights attach to the privately

and publicly owned lands between the ocean waters and the most seaward of the

following: the first line of stable natural vegetation, the toe of the frontal dune, or

“any other reliable indicator of the mean regular extent of the storm tide.” Id. at 93,

780 S.E.2d at 197.

 Public trust rights “include, but are not limited to, the right to navigate, swim,

hunt, fish, and enjoy all recreational activities” offered by public trust lands, as well

as “the right to freely use and enjoy the State’s ocean and estuarine beaches and

public access to the beaches.” N.C. Gen. Stat. § 1-45.1 (2017); see also Nies, 244 N.C.

 14
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

App. at 88, 780 S.E.2d at 194. The State is tasked with protecting these rights

pursuant to the North Carolina Constitution:

 It shall be the policy of this State to conserve and protect
 its lands and waters for the benefit of all its citizenry, and
 to this end it shall be a proper function of the State of North
 Carolina and its political subdivisions to acquire and
 preserve park, recreational, and scenic areas, to control
 and limit the pollution of our air and water, to control
 excessive noise, and in every other appropriate way to
 preserve as a part of the common heritage of this State its
 forests, wetlands, estuaries, beaches, historical sites,
 openlands, and places of beauty.

N.C. Const. art. XIV, § 5.

 Towns “may, by ordinance, define, prohibit, regulate, or abate acts, omissions,

or conditions upon the State’s ocean beaches and prevent or abate any unreasonable

restriction of the public’s rights to use the State’s ocean beaches.” N.C. Gen. Stat. §

160A-205(a) (2017).6 Thus, municipalities may “limit[ ] the public’s right to use the

public trust dry sand beaches . . . through appropriate use of the State’s police

power[,]” Nies, 244 N.C. App. at 93, 780 S.E.2d at 197, enforce ordinances regulating

the public trust through injunction and abatement actions, N.C. Gen. Stat. § 160A-

175 (2017), and may assert the public trust doctrine as a defense to suits challenging

such non-compensable regulatory exercises as Fifth Amendment takings requiring

compensation. Nies, 244 N.C. App. at 94, 780 S.E.2d at 197; cf. Fish House, Inc. v.

 6 This same authority has also been delegated to the State’s counties. N.C. Gen. Stat. § 153A-
145.3 (2017).

 15
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

Clarke, 204 N.C. App. 130, 136-37, 693 S.E.2d 208, 213 (2010) (allowing a private

defendant to assert the public trust doctrine as a defense to an action for trespass).

 The legislature also has delegated the State’s eminent domain powers to

municipalities and counties for the purposes of:

 [e]ngaging in or participating with other governmental
 entities in acquiring, constructing, reconstructing,
 extending, or otherwise building or improving beach
 erosion control or flood and hurricane protection works,
 including, but not limited to, the acquisition of any
 property that may be required as a source for beach
 renourishment.

N.C. Gen. Stat. § 40A-3(b1)(10) (2017).

C. Application to This Case

 We now consider whether public trust rights render the taking here non-

compensable and hold, on the procedural facts before us, that they do not.

 The trial court concluded in the Revised 40A-47 Order that the Easement Area,

though the private property of the Richardsons, was public trust land subject to public

trust rights.7 But the Town did not argue at trial that the public trust doctrine

 7 The Richardsons conceded in their briefs that public trust rights attached to the Easement
Area. Despite this concession, the Richardsons argue that the Revised 40A-47 Order was “erroneous[,]”
and that the original 40A-47 Order, decreeing the Easement Area free of public trust rights, is the law
of the case. Rule 54(b) of the North Carolina Rules of Civil Procedure states that “in the absence of
entry of . . . a final judgment, any order or other form of decision is subject to revision at any time
before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.”
N.C. Gen. Stat. § 1A-1, Rule 54(b) (2017). Because orders entered under Section 40A-47 are
interlocutory rather than final judgments, City of Winston-Salem v. Slate, 185 N.C. App. 33, 37, 647
S.E.2d 643, 646 (2007), Judge Trawick, who entered the earlier 40A-47 Order, was permitted to enter
the Revised 40A-47 Order. The Revised 40A-47 Order was also certified for immediate appeal

 16
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

rendered the taking non-compensable. The trial court erred in entering JNOV eight

months after the verdict on a basis not argued during the trial.

 A motion for JNOV may be granted only “in accordance with [the movant’s]

motion for a directed verdict.” N.C. Gen. Stat. § 1A-1, Rule 50(b)(1) (2017); see also

Couch v. Private Diagnostic Clinic, 133 N.C. App. 93, 100, 515 S.E.2d 30, 36 (1999)

(“A motion for JNOV is treated as a renewal of the motion for directed verdict. Thus,

a movant cannot assert grounds on a motion for JNOV that were not previously raised

in the directed verdict motion.” (internal citations omitted)). Because the trial court’s

entry of JNOV grants the Town’s motion for JNOV “pursuant to Rule 50(b)[,]” it is

proper only if it accords with the Town’s earlier motion for directed verdict.

 The Town’s motion for directed verdict and motions in limine presented no

argument that it already possessed the Easement Rights through the public trust

doctrine. Nor did the Town argue that the public trust doctrine rendered the taking

non-compensable. The motions sought only to limit expert testimony that would deny

the effect of public trust rights on the compensable value of the Richardsons’ property

and, specifically, the Easement Area.

pursuant to Rule 54(b), and neither party timely noticed an appeal therefrom; as a result, they may
not contest its contents months after its entry. See, e.g., Guthrie v. Conroy, 152 N.C. App. 15, 19, 567
S.E.2d 403, 407 (2002) (noting that appeal of an order certified pursuant to Rule 54(b) must be
immediately appealed within the time proscribed by N.C. R. App. P. 3(c)(1)). We leave the Revised
40A-47 Order undisturbed in resolving this appeal.

 17
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

 During the hearing on the motions in limine, when asked by the trial court

why the public trust did not eliminate the need for condemnation, the Town expressly

argued that the Easement Rights were not public trust rights and the condemnation

was still necessary:

 [THE TOWN]: . . . The public trust rights [are] not about
 what we took, it’s about the value of what we took.

 ...

 THE COURT: Now let me ask you, then why did you have
 to do a taking?

 [THE TOWN]: Because we wanted to put trucks and pipes
 and wanted to put sand on the property. That is what is in
 the complaint. . . . Those are the rights we took. Public
 trust rights doesn’t go to the rights we took. It goes to the
 value of what we took. It limits the value because some of
 their rights and their bundle of rights weren’t there in the
 first place. . . . [A]ny time [the Richardsons] say it’s got
 something to do with the rights we took, it has nothing to
 do with the rights we took. It has to do with the rights that
 were there to take.

 ...

 [W]e don’t want a ruling of this Court to preclude people
 from being able to walk on this beach. And we also don’t
 want their perspective to keep us from showing that the
 value of this area was reduced by people having the ability
 to walk on the beach. It may or may not have been reduced
 by much and that is what we want. We want the ability to
 be able to say that people can walk on the beach in this
 easement area.

 18
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

(emphasis added). The Town’s motions for directed verdict at trial were likewise

devoid of any argument that the Town already possessed Easement Rights or that

the public trust doctrine precluded recovery, as they were simply renewals of the

earlier motions in limine regarding expert testimony offered by the Richardsons, and

the Town’s motion for JNOV conceded that the taking was compensable and expressly

requested entry of a judgment in the Richardsons’ favor in the amount of $330.

 During the JNOV hearing, Judge Trawick, unprompted by either party,

advanced the question of whether the Town already possessed the Easement Rights

through the public trust and requested additional briefing on the issue at the hearing

on the motion for JNOV. Judge Trawick ultimately granted the JNOV motion based

on the conclusion that public trust rights precluded an award of compensation to the

Richardsons.

 But a trial court may only enter a sua sponte order on JNOV within ten days

of entry of judgment; the JNOV here was entered months after final judgment. N.C.

Gen. Stat. § 1A-1, Rule 50(b)(1); see also Jones v. S. Gen. Ins. Co., 222 N.C. App. 435,

436–37, 731 S.E.2d 508, 509 (2012) (reversing a trial judge’s sua sponte order for new

trial entered more than ten days after judgment as “not properly entered” and “not

permissible”). Further, such a sua sponte order may only “grant, deny, or redeny a

motion for directed verdict made at the close of all the evidence . . . .” N.C. Gen. Stat.

§ 1A-1, Rule 50(b)(1). So, eight months after final judgment, the trial court could only

 19
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

enter JNOV under Rule 50(b)(1) consistent with those arguments raised by the Town

in its timely filed motions for directed verdict and JNOV. As a result, we hold that

the trial court erred in concluding on JNOV that the Town already possessed the

Easement Rights and that the public trust doctrine rendered the taking non-

compensable because neither argument was raised at directed verdict or JNOV.

 Our holding finds further support in precedent interpreting procedural

condemnation statutes and related caselaw. Section 40A-47 of our General Statutes

provides that the trial court is required to determine “any and all issues raised by the

pleadings other than the issue of compensation, including . . . title to the land, interest

taken, and area taken.” N.C. Gen. Stat. § 40A-47 (2017) (emphasis added). This

Court has read virtually identical language in highway condemnation statutes to

mean that “at a minimum, a party must argue all issues of which it is aware, or

reasonably should be aware, in [such] a hearing.” City of Wilson v. The Batten Family,

L.L.C., 226 N.C. App. 434, 439, 740 S.E.2d 487, 491 (2013) (interpreting language

almost identical to Section 40A-47 in Section 136-108). Also, in In re Simmons, 5 N.C.

App. 81, 167 S.E.2d 857 (1969), this Court reviewed a host of treatises and decisions

from other jurisdictions concerning the condemnor’s admission of ownership in a

condemnation action, and quoted with approval the following:

 [T]he petitioner is estopped from showing that title is in
 the public or in itself, by dedication prescription or
 otherwise, if it has alleged in its petition that the
 respondent is the owner. . . . The institution of the

 20
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

 [condemnation] proceeding admits the ownership. The
 condemnor cannot claim the beneficial ownership of the
 land and at the same time assert that the condemnee
 claims all or some part of that interest[.] . . . A party cannot
 proceed to condemn land as the property of another and
 then in that same proceeding set up a paramount right or
 title in itself either by prescription, dedication or
 otherwise.

5 N.C. App. at 86–87, 167 S.E.2d at 861 (internal citations and quotation marks

omitted).

 Here, the Town alleged in its complaint that the Richardsons, and not the

Town, possessed the Easement Rights; the Richardsons’ answer admits such

possession. Assuming arguendo that the Town could still request a determination of

the issue by the trial court when no issue as to the Town’s pre-existing possession of

the rights was “raised by the pleadings,” N.C. Gen. Stat. § 40A-47, it was required to

assert such an argument in the hearing provided by that statute. City of Wilson, 226

N.C. App. at 439, 740 S.E.2d at 491.

 In the initial hearing to determine all issues other than damages pursuant to

Section 40A-47, counsel for the Town stated that “our theory of the taking here, [is]

that the Town doesn’t have the right to place the sand and do the work for this project

without acquiring the easement rights we have condemned in this case.” The hearing

continued:

 [THE TOWN]: We’re talking about the rights—clearly they
 have the right to exclude the contract which—but for our
 acquisition of the easement rights.

 21
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

 ...

 THE COURT: . . . You can’t file a declaration for taking and
 then ask me to say that you took less than what the
 declaration says.

 [THE TOWN]: I completely agree.

(emphasis added). As recounted supra, the Town maintained that position through

the hearing on its motions in limine even when alerted to the question by the trial

court. Indeed, that was the Town’s apparent position through its motions for directed

verdict, final judgment, and its motion for JNOV. On appeal from a post-judgment

order, the Town’s argument comes too late.

 Finally, although orders entered following an “all other issues” hearing are

interlocutory, errors pertaining to “vital preliminary issues” determining what land

is being condemned and “any question[s] as to its title” must be immediately

appealed. N.C. State Highway Comm’n v. Nuckles, 271 N.C. 1, 14, 155 S.E.2d 772,

784 (1967); see also Dep’t of Transp. v. Rowe, 351 N.C. 172, 176, 521 S.E.2d 707, 709

(1999) (limiting the immediate appeal rule in Nuckles to those two questions); but see

Town of Apex v. Whitehurst, 213 N.C. App. 579, 583–85, 712 S.E.2d 898, 901–02

(2011) (holding that whether condemnation was for a public purpose, though not an

issue of title or identification of land, was nonetheless a vital issue requiring

immediate appeal, as it was necessary to determine whether a lawful taking had

occurred at all).

 22
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

 The Town’s argument that it already possessed the Easement Rights under

the public trust doctrine raises an issue of vital importance concerning a question of

title: whether the Richardsons’ title included the rights the Town sought to take from

them through condemnation. Because the Revised 40A-47 Order decreed that the

Easement Rights were taken by the Town through condemnation, the Town was

required to assert any argument to the contrary by appeal within 30 days of the

order’s entry pursuant to N.C. R. App. P. 3(c)(1). See Nuckles, 271 N.C. at 14, 155

S.E.2d at 784; Rowe, 351 N.C. at 176, 521 S.E.2d at 709; City of Wilson, 226 N.C. App.

at 440, 740 S.E.2d at 491; Whitehurst, 213 N.C. App. at 585, 712 S.E.2d at 902. This

it failed to do, and we dismiss those arguments.8

D. Sufficiency of the Evidence

 Having resolved whether the taking in this case was compensable, we consider

whether the Richardsons presented evidence sufficient as a matter of law to support

a jury verdict of $60,000 for the fair market value of the Easement. We hold that

they did.

 8 Though we hold that the Town is estopped from advancing the argument that it already
possessed the Easement Rights pursuant to the public trust doctrine in this action, nothing in this
opinion should be read to preclude condemnors in other actions from asserting such an argument prior
to a 40A-47 hearing, timely and appropriately amending their complaints and pleadings if able, or
otherwise raising the issue when proper before the trial court. Nor should this opinion be read to
preclude a trial court from amending its 40A-47 order pursuant to Rule 54(b) of our Rules of Civil
Procedure prior to final judgment, or under any other available authority, when doing so would not
run afoul of the prohibition against superior court judges modifying, overruling, or changing another
superior court judge’s ruling. See, e.g., Bruggeman v. Meditrust Co., LLC, 165 N.C. App. 790, 795, 600
S.E.2d 507, 510-11 (2004) (detailing the rule prohibiting superior court judges from altering one
another’s orders and exceptions thereto).

 23
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

 Section 40A-64(b) provides:

 If there is a taking of less than the entire tract, the measure
 of compensation is the greater of either (i) the amount by
 which the fair market value of the entire tract immediately
 before the taking exceeds the fair market value of the
 remainder immediately after the taking; or (ii) the fair
 market value of the property taken.

N.C. Gen. Stat. § 40A-64(b) (2017). Valuation under the first subpart, Section 40A-

64(b)(i), is commonly referred to as the “before and after method[,]” Town of Midland

v. Wayne, 368 N.C. 55, 63, 773 S.E.2d 301, 307 n. 6 (2015), while the second method,

per the plain language of the statute, is simply a fair market valuation of the discrete

portion of property taken. N.C. Gen. Stat. § 40A-64(b)(ii). Thus, to measure the

proper award to the Richardsons, the jury was required to: (1) calculate a value

employing the “before and after method;” (2) calculate the fair market value of the

Easement taken by the Town; and (3) award the Richardsons the greater of those two

values.

 Because the jury calculated the “before and after” measure of value to be zero

and the Richardsons request reinstatement of the final judgment on the jury verdict,

our review concerns only the jury’s calculation of the market value of the Easement

itself.

 While the statute does not define “fair market value,” our Supreme Court has

described it as follows:

 [T]he well established rule is that in determining fair

 24
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

 market value the essential inquiry is “what is the property
 worth in the market, viewed not merely with reference to
 the uses to which it is plainly adapted—that is to say, what
 is it worth from its availability for all valuable uses?”

State v. Johnson, 282 N.C. 1, 14, 191 S.E.2d 641, 651 (1972) (quoting Barnes v. N.C.

State Highway Comm’n, 250 N.C. 378, 387, 109 S.E.2d 219, 227 (1959) (alteration in

original)). Stated in other terms, “the fair market value is ‘the highest market price

[property] would bring for its most advantageous uses [at the time of taking] and in

the foreseeable future.’ ” In re Appeal of Parsons, 123 N.C. App. 32, 41, 472 S.E.2d

182, 188 (1996) (quoting United States v. Cunningham, 166 F.Supp. 76, 78 (E.D.N.C.

1958), rev’d on other grounds, 270 F.2d 545 (4th Cir. 1959), cert. denied, 362 U.S. 989,

4 L. Ed. 2d 1022, (1960)). In calculating that value, “[a]ll factors pertinent to a

determination of what a buyer, willing to buy but not under compulsion to do so,

would pay and what a seller, willing to sell but not under compulsion to do so, would

take for the property must be considered.” City of Charlotte v. Charlotte Park &

Recreation Comm’n, 278 N.C. 26, 34, 178 S.E.2d 601, 606 (1971).

 Evidence of fair market value may be introduced through, among other means,

the expert opinions of appraisers or the lay testimony of the landowner. Dep’t. of

Transp. v. M.M. Fowler, Inc., 361 N.C. 1, 6, 637 S.E.2d 885, 890 (2006). “Methods of

appraisal acceptable in determining fair market value include: (1) comparable sales,

(2) capitalization of income, and (3) cost. While the comparable sales method is the

preferred approach, the next best method is capitalization of income when no

 25
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

comparable sales data are available.” Id. at 13, 637 S.E.2d at 894 n. 5 (internal

citations omitted). That said, “our courts have recognized that ‘expert real estate

appraisers should be given latitude in determining the value of property’ in eminent

domain cases[.]” City of Charlotte v. Combs, 216 N.C. App. 258, 263, 719 S.E.2d 59,

63 (2011) (quoting Duke Power Co. v. Mom ‘n’ Pops Ham House, Inc., 43 N.C. App.

308, 312, 258 S.E.2d 815, 819 (1979)).

 Here, the jury heard evidence concerning the “before and after method”

valuation by the Richardsons’ appraisers, who employed the sales comparison and

cost approaches. The jury ultimately found this value to be zero. By contrast, it found

the fair market value of the Easement taken to be $60,000 and awarded the

Richardsons that amount as the greater of the found values. The Town contends that

verdict is unsupported by legally sufficient evidence. We disagree.

 Mr. Bourne, an expert witness for the Richardsons, estimated the Easement’s

value to be $70,000 by calculating the difference in value between properties that

were oceanfront, in other words, those with property lines extending to the mean high

water mark, and those that were merely beachfront, in other words, those with

property lines abutting the beach but stopping short of the mean high water mark.

This calculation, however, is derived solely from the beach nourishment project’s

impacts and is outside the statutory scope of a taking’s compensable fair market

value.

 26
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

 “The value of the property taken . . . does not include an increase or decrease

in value before the date of valuation that is caused by (i) the proposed improvement

or project for which the property is taken[.]” N.C. Gen. Stat. § 40A-65 (2017). The

fair market value of the Easement, as a discrete value under Section 40A-64(b)(ii),

cannot be derived from factors resulting from the Town’s beach nourishment project

under Section 40A-65.9 Mr. Bourne’s $70,000 valuation, statutorily excluded from

the fair market value of the Easement, is therefore neither relevant to nor probative

of the issue, so this evidence does not support the jury’s award on this question. See,

e.g., Asfar, 127 N.C. App. at 504, 490 S.E.2d at 600 (recognizing that only substantial,

i.e. relevant, evidence is considered on JNOV).

 Our holding in this context accords with statutory and caselaw governing

condemnations by the North Carolina Department of Transportation. Compensation

for a partial taking for highway condemnations is measured through application of

the “before and after method.” N.C. Gen. Stat. § 136-112(1) (2017). If an entire tract

is condemned, the condemnee is entitled to “the fair market value of the property at

the time of taking.” N.C. Gen. Stat. § 136-112(2). Because the damages statute

applicable to this case, Section 40A-64(b), requires the calculation of both measures

of damages contained in Section 136-112, i.e., the fair market value of the discrete

taking and the “before and after method” value, reference to our caselaw on damages

 9 The Town asserted this argument in its directed verdict motion.

 27
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

in highway condemnations is instructive. See Town of Midland, 368 N.C. at 63, 773

S.E.2d at 307 (construing Section 40A-64(b) through reference to Section 136-112 and

related caselaw).

 In applying Section 136-112, this Court has held that “[t]he market value of

the condemned property is to be determined on the basis of the conditions existing at

the time of the taking.” Dep’t of Transp. v. Mahaffey, 137 N.C. App. 511, 518, 528

S.E.2d 381, 385 (2000) (emphasis added) (citation omitted). And, while it is true that

the post-condemnation impacts of a partial taking may be considered in arriving at a

fair market value under that statute, this applies only “to the fair market value of the

remainder immediately after the taking . . . .” N.C. State Highway Comm’n v.

Gasperson, 268 N.C. 453, 455, 150 S.E.2d 860, 862 (1966) (emphasis added) (citation

omitted). Assuming arguendo that Mr. Bourne’s $70,000 valuation, derived from

post-taking impacts, was relevant to the issues of damages in this case, it could only

be relevant to the difference in fair market value calculation pursuant to Section 40A-

64(b)(i) and not the discrete fair market value of the Easement at the time of taking

under Section 40A-64(b)(ii).

 We next consider Mr. Gruelle’s testimony and hold that, without regard to its

admissibility, it is sufficient as a matter of law to support the jury’s verdict.

 “[T]he measure of damages for a temporary taking is the ‘rental value of the

land actually occupied’ by the condemnor.” Combs, 216 N.C. App. at 261, 719 S.E.2d

 28
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

at 62 (quoting Leigh v. Garysburg Mfg. Co., 132 N.C. 167, 170, 43 S.E. 632, 633

(1903)); see also United States v. Banisadr Bldg. Joint Venture, 65 F.3d 374, 378 (4th

Cir. 1995) (“[W]hen the Government takes property only for a period of years, . . . it

essentially takes a leasehold in the property. Thus, the value of the taking is what

rental the marketplace would have yielded for the property taken.”). The United

States Supreme Court’s discussion concerning the determination of the value of a

temporary taking is instructive:

 The value compensable under the Fifth Amendment,
 therefore, is only that value which is capable of transfer
 from owner to owner and thus of exchange for some
 equivalent. Its measure is the amount of that
 equivalent. . . . But when the property is of a kind seldom
 exchanged, it has no ‘market price,’ and then recourse must
 be had to other means of ascertaining value, including even
 value to the owner as indicative of value to other potential
 owners enjoying the same rights. These considerations
 have special relevance where ‘property’ is ‘taken’ not in fee
 but for an indeterminate period.

 ...

 [D]etermination of the value of temporary occupancy can
 be approached only on the supposition that free bargaining
 between petitioner and a hypothetical lessee of that
 temporary interest would have taken place in the usual
 framework of such negotiations. . . . [T]he proper measure
 of compensation is the rental that probably could have been
 obtained . . . .

Kimball Laundry Co. v. United States, 338 U.S. 1, 5–7, 93 L.Ed. 1765, 1772–73 (1949).

Because temporary easements are valued as rentals rather than sales under North

 29
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

Carolina law, Combs, 216 N.C. App. at 261, 719 S.E.2d at 62, the fair market value

of the Easement taken by the Town is the “fair market rental value for the period of

time the property is taken[.]” 4 Nichols on Eminent Domain § 12E.01[4] (rev.3d ed.

2006) (citing Leigh, 132 N.C. at 170, 43 S.E. at 633).

 As recounted supra, Mr. Gruelle testified that the Easement was valued at

$190,000. He reached this value by determining the best and highest use of the entire

lot, calculating a value per square foot based on that use, and applying that value to

the square footage of the Easement Area. He then reduced that total value by ten

percent, reasoning that the Town’s use of the Easement Area “represented 90 percent

of the value of the easement area.” Mr. Gruelle explained that this valuation “look[s]

at [the Easement] as the land rental because that’s what it is[,]” and testified that his

number was “consistent with the way the market looks at ground lease or renting,

use of the land for a period of time.” In seeking to arrive at the fair rental value of

the Easement, Mr. Gruelle provided a scintilla of evidence relevant to that issue. “A

scintilla of evidence is defined as very slight evidence,” Everhart v. O’Charley’s Inc.,

200 N.C. App. 142, 149, 683 S.E.2d 728, 735 (2009) (citation and quotation marks

omitted), and Mr. Gruelle’s $190,000 valuation provided, at a minimum, very slight

evidence sufficient to support the jury’s finding that the Easement’s fair market value

was $60,000.

 30
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

 The Town argues in support of its cross-appeal that Mr. Gruelle’s testimony is

incompetent. It further contends that such an argument is properly asserted under

our Rules of Appellate Procedure as “an alternative basis in law for supporting the

[JNOV.]” N.C. R. App. P. 28(c). This is not so; in appellate review of JNOV, “[a]ll

relevant evidence admitted by the trial court, whether competent or not, must be

accorded its full probative force in determining the correctness of its ruling . . . .

Bishop v. Roanoke Chowan Hosp., Inc., 31 N.C. App. 383, 385, 229 S.E.2d 313, 314

(1976) (citation and quotation marks omitted); cf. Huff v. Thornton, 23 N.C. App. 388,

391, 209 S.E.2d 401, 403 (1974) (“We hold . . . that an assignment of error directed to

the trial court’s ruling on a motion for directed verdict . . . does not present for review

rulings on the admission or exclusion of evidence.” (emphasis added)). This limitation

on our review is designed to avoid unfairness, as “the admission of such evidence may

have caused the [Richardsons] to omit competent evidence of the same import.” Huff,

23 N.C. App. at 390, 209 S.E.2d at 403. We therefore do not reach the issue as raised

in the Town’s appellee brief under Rule 28(c). Mr. Gruelle’s testimony was

admitted—albeit in error, as we hold infra Part II.E.—and because it provides a

scintilla of evidence to support the jury’s verdict, we reverse the trial court’s entry of

JNOV.

E. The Town’s Cross-Appeal

 31
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

 Beyond its appellee brief, the Town also cross-appeals the denial of its motions

in limine on the grounds that Mr. Gruelle’s testimony is incompetent. The

Richardsons contend that the Town is without standing to appeal, as it is not a “party

aggrieved” within the meaning of N.C. Gen. Stat. § 1-271 (2017). Seeing merit in the

Town’s cross-appeal and assuming arguendo that the Town does not otherwise have

the right to appeal the interlocutory orders, we elect to treat the Town’s cross-appeal

as a petition for writ of certiorari and grant it in our discretion. N.C. R. App. P.

21(a)(1) (2017) (“The writ of certiorari may be issued . . . when no right of appeal from

an interlocutory order exists . . . .”).10

 The Town argues that Mr. Gruelle’s testimony was inadmissible because it

failed to meet the criteria of Rule 702(a) of the North Carolina Rules of Evidence. 11

 10 The Richardsons’ brief on cross-appeal contains a purported “motion for sanctions.”
However, “[m]otions to an appellate court may not be made in a brief” and must instead be made in
accordance with the applicable Rules of Appellate Procedure. Horton v. New South Ins. Co., 122 N.C.
App. 265, 268, 468 S.E.2d 856, 858 (1996); see also Johnson v. Schultz, 195 N.C. App. 161, 164, 671
S.E.2d 559, 562 (2009) (declining to address a motion presented in a brief for noncompliance with N.C.
R. App. P. 25 and 37). We decline to consider the Richardsons’ “motion,” particularly in light of the
Town’s meritorious argument.
 11 The Richardsons rightly point out that, when a motion in limine seeking to exclude certain

evidence has been denied, the movant must object to the admission of that evidence at trial to preserve
the matter for appeal. State v. Patterson, 194 N.C. App. 608, 616, 671 S.E.2d 357, 362 (2009), overruled
on separate grounds, State v. Campbell, 368 N.C. 83, 772 S.E.2d 440 (2015). The Town did so here.
The trial transcript discloses six instances in which Mr. Gruelle testified on direct to the $190,000
value of the Easement; each one was followed by an objection from the Town’s attorneys. While it is
true that Mr. Gruelle discussed the number as part of lengthy answers that were uninterrupted by
either party’s counsel, the trial court acknowledged that the nature of the Richardsons’ questioning
and Mr. Gruelle’s answers made it difficult for the Town to know when to object, and the Town did
lodge objections at the conclusion of each answer from Mr. Gruelle. Finally, the Town’s counsel stated
on the record his intention to object to the opinions given by Mr. Gruelle. On the transcript before us,
we hold that the Town preserved the issue for appellate review.

 32
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

A trial court’s ruling on the admissibility of expert opinion is subject to review only

for an abuse of discretion. State v. McGrady, 368 N.C. 880, 893, 787 S.E.2d 1, 11

(2016). McGrady adopted the standard of admissibility applicable to expert

testimony pursuant to Rule 702(a) as set forth in Daubert v. Merrell Dow Pharm.,

Inc., 509 U.S. 579, 125 L.Ed.2d 469 (1993), and clarified in General Elec. v. Joiner,

522 U.S. 136, 139 L.Ed.2d 508 (1997) and Kumho Tire Co. v. Carmichael, 526 U.S.

137, 143 L.Ed.2d 238 (1999). The North Carolina Supreme Court in McGrady noted

that this admissibility standard “is not new to North Carolina law[,]” 368 N.C. at 892,

787 S.E.2d at 10, and that it did not overrule existing caselaw “as long as those

precedents do not conflict with the rule’s . . . text or with Daubert, Joiner, or Kumho.”

368 N.C. at 888, 78 S.E.2d at 8. The principal change in the standard post-McGrady

regarding reliability is a heightened “level of rigor that our courts must use to

scrutinize expert testimony before admitting it.” Id. at 892, 787 S.E.2d at 10

(citations omitted).

 The Town directs us to this Court’s pre-McGrady decision in City of Charlotte

v. Combs, 216 N.C. App. 258, 719 S.E.2d 59 (2011), which reversed a judgment on a

jury verdict in a temporary construction easement condemnation action and ordered

a new trial on the basis that the condemnor’s expert appraiser’s methodology was not

sufficiently reliable to be admissible. 216 N.C. App. at 266–67, 719 S.E.2d at 65–66.

That decision, in turn, relied on the North Carolina Supreme Court’s decision in

 33
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

Haywood, which affirmed a directed verdict in favor of the condemnor after holding

that the condemnee’s experts’ opinions were unreliable. 360 N.C. at 352–53, 626

S.E.2d at 647. In Haywood, experts testified that certain percentages used in arriving

at damages were based on “feelings and personal opinions,” which the Supreme Court

concluded were “unsupported by objective criteria,” and amounted to “hunches and

speculation.” Id. at 352, 626 S.E.2d at 647. As a result, our Supreme Court held that

the experts’ opinions were not based on “any method used to arrive at [their] figures,”

and therefore were not reliable. Id. at 352, 626 S.E.2d at 647. Combs reversed a

judgment based on a jury verdict because the condemnor’s expert “based his valuation

of the [easement] on his experience that such temporary takings do not affect the

remainder of the condemnee’s property, rather than an actual assessment that the

[condemnee’s] property outside of the [easement] was not affected[.]” 216 N.C. App.

at 266–67, 719 S.E.2d at 65. We therefore held that the appraiser’s “method of proof

lacked sufficient reliability.” Id. at 266–67, 719 S.E.2d at 65. As recounted supra,

Mr. Gruelle arrived at his $190,000 value for the Easement by calculating a dollar-

per-square-foot value for the property, applying that value to the square footage of

the Easement Area, and reducing that total amount by ten percent. Mr. Gruelle then

opined that the Easement “represented 90 percent of the value of [the Easement

Area].” When asked how he arrived at the 90 percent number, he stated that it was

“based on the broad nature of those rights, [which] in [his] opinion . . . represented 90

 34
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

percent of the value of the easement area.”12 He then “check[ed] . . . if that 90 percent

was reasonable” by evaluating the taking as a temporary construction easement or a

ground lease.

 Rather than attempting to compare the Easement to actual temporary

construction easements and ground leases, and even after recognizing that “there are

many indicators based on the value of the property” in calculating the value of such

property rights, Mr. Gruelle assumed that the “typical” temporary construction

easement and ground lease is valued at “a ten percent return to the land for the

duration[.]” That formulation, applied to the ten-year duration of the Easement,

resulted in a complete taking of 100 percent of the Easement Area’s value. After

conceding that his calculation was equivalent to a total taking in fee of the Easement

Area, Mr. Gruelle decided to depart from that result as he did not “think it would

exceed the value of the fee[,]” and instead asserted that 90 percent was the correct

value because “it would come close to the fee value . . . because it was total . . .

utilization of that property for 10 years.”13

 12 Mr. Gruelle’s written report provides no indication of how he arrived at the 90 percent
number; rather it simply states that “the property owners will lose control of approximately 24% of
their whole property and 100% of their beach property. As such, the percentage of the rights acquired
are concluded to represent 90% of the fee value of the easement area.”
 13 Mr. Gruelle’s deposition testimony largely comports with his testimony at trial, with the

added details at deposition that: (1) he did not discuss the valuation of beach nourishment easements
with appraisers and real estate agents local to the Nags Head area in preparing his written report;
and (2) he could not further “br[eak] [the 90 percent number] out” to explain it, and instead explained
that he just “looked at it as a ten percent return on the land, . . . like a temporary construction
easement.”

 35
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

 Mr. Bourne, who was retained by the Richardsons in part to review and

support Mr. Gruelle’s appraisal, testified at deposition that Mr. Gruelle’s assumption

that the typical ground lease or temporary construction easement was valued at a

ten-percent-per-year return was unfounded. Specifically, Mr. Bourne stated that: (1)

ground leases and temporary construction easements are different; (2) “[t]hey all

have different terms, so it’s difficult to generalize[;]” (3) he would not assume a return

of ten percent per year, but instead “would look at some doc — yes, some

information[;]” and (4) there was no “rule of thumb” that ground leases are valued at

a ten-percent-per-year return.

 As in Haywood, Mr. Gruelle did not articulate a method for reaching his

opinion that the easement was valued at $190,000. Haywood, 360 N.C. at 352, 626

S.E.2d at 647; see also Combs, 216 N.C. App. at 266–67, 719 S.E.2d at 65. Testimony

based solely on a conclusory opinion does not present any method to which a trial

judge can apply the three-part reliability test from Daubert under Rule 702, and

admitting such evidence is an abuse of discretion. Combs, 216 N.C. App. at 266–67,

719 S.E.2d at 65–66.14

 14 We note that the trial court’s JNOV order implicitly acknowledges that Mr. Gruelle’s
testimony was inadmissible as to the fair market value of the Easement, as it concluded “[t]he only
competent expert testimony introduced at trial on the first preliminary question regarding market
value of the temporary beach nourishment easement was the $330.00 market value testified to by the
Town’s expert witness Michael N. Moody, MAI.” See Blair Invs., LLC v. Roanoke Rapids City Council,
231 N.C. App. 318, 321, 752 S.E.2d 524, 527 (2013) (“[C]ompetent evidence is generally defined as
synonymous with admissible evidence[.]”) (citation omitted).

 36
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

 To the extent that Mr. Gruelle attempted to verify his 90 percent opinion by

treating the Easement as a “typical” ground lease or temporary construction

easement, his testimony “seemed to deny the sufficiency of his own . . .

methodology[,]” Kumho, 526 U.S. at 155, 143 L.Ed.2d at 255, as he recognized that

such a calculation would value the Easement at 100 percent of its fee value, not his

preferred value of 90 percent. Rather than accept this illogic, he “made [an]

adjustment” back down to his 90 percent number, but did not explain why an

adjustment by ten percent, and not some other percentage, was appropriate. Finally,

Mr. Bourne demonstrated that Mr. Gruelle’s method was unreliable, testifying at

deposition that there is no “typical” ten percent return per year for ground leases or

construction easements, that every such valuation was different, and that engaging

in such a valuation would require a review of external data. Mr. Gruelle’s unfounded

assumption that the “typical” ground lease or temporary construction easement

carried a ten percent return per year was simply “based on hunches and speculation

. . . lack[ing] sufficient reliability.” Haywood, 360 N.C. at 352, 626 S.E.2d at 647.

Such “conjecture, speculation, or surmise is not allowed by the law to be a basis of

proof in respect of damages or compensation” in condemnation cases, Raleigh, C. &

S. Ry. Co. v. Mecklenburg Mfg. Co., 169 N.C. 156, 160, 85 S.E. 390, 392 (1915).15

Therefore, Mr. Gruelle’s testimony fails the requirement of Rule 702 that “[t]he

 15 This opinion was reprinted in 1955 at 169 N.C. 204.

 37
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

testimony [must be] the product of reliable principles and methods.” N.C. R. Evid.

702(a)(2) (2015). The trial court abused its discretion in admitting this testimony,

and remand for a new trial is appropriate. Combs, 216 N.C. App. at 267, 719 S.E.2d

at 66 (remanding for new trial in light of improperly admitted expert testimony as to

just compensation); see also M. M. Fowler, 361 N.C. at 15, 637 S.E.2d at 895

(remanding for new trial on damages in condemnation action where expert testimony

was erroneously admitted).

 III. CONCLUSION

 The Town is not entitled to JNOV on the ground that it already possessed the

Easement Rights through the public trust doctrine, nor on the ground that the

doctrine otherwise precludes all recovery, because these arguments were not raised

until months after final judgment. Further, the Town is estopped from asserting that

no condemnation occurred and that it already possessed these rights because: (1) it

admitted it did not possess them in its complaint; (2) it did not raise the issue at the

“all other issues” hearing under Section 40A-47; (3) it expressly disavowed reliance

on the public trust doctrine at that hearing and at its hearing on its motions in limine;

and (4) it did not raise the issue at trial, in its motions for directed verdict, or in its

motion for JNOV. Further, the Richardsons introduced evidence sufficient to support

the jury verdict. We therefore reverse the entry of JNOV. We nonetheless remand

for a new trial on the Town’s cross-appeal, as we hold that the trial court abused its

 38
 TOWN OF NAGS HEAD V. RICHARDSON

 Opinion of the Court

discretion in admitting Mr. Gruelle’s expert testimony. At the new trial the parties

may introduce additional new evidence on the issue of damages in conformity with

this opinion.

 REVERSED AND REMANDED FOR NEW TRIAL.

 Judge HUNTER concurs.

 Judge DILLON concurs in part and dissents in part in a separate opinion.

 39
 No. COA17-498 – TOWN OF NAGS HEAD v. RICHARDSON

 DILLON, Judge, concurring in part and dissenting in part.

 I concur in the portions of the majority opinion concerning the “public trust

doctrine” contained in subsections A, B, and C of the “Discussion” section of that

opinion. Indeed, the issue of whether the actions of the Town in engaging in the beach

nourishment project in the public trust portion of the beach constituted a

compensable taking of Defendants’ property rights is not before us. The Town

admitted to the taking. Rather, the only issue concerns the calculation of damages.

 For the reasons stated below, I dissent from the portion of the majority’s

analysis contained in subsections D and E, concerning Defendants’ evidence on

damages. My disagreement with the majority involves a very nuanced evidentiary

issue. Indeed, I agree with much of the majority’s concern regarding the testimony

offered by Defendants’ experts. But based on my disagreement, I must conclude that

a new trial is not necessary in this case; the trial court correctly granted the Town’s

judgment JNOV to the extent it set aside the jury’s verdict of $60,000. Rather, the

matter should be remanded to the trial court for the limited purpose of reducing the

judgment to $330 based on the only relevant evidence (which came from the Town’s

expert) to support the value of the easement that the Town admitted to taking.

 As noted by the majority, under the applicable statute, Defendants are entitled

to the GREATER of (1) the diminution in the fair market value of their entire lot

caused by the taking of the easement and (2) the fair market value of the easement

itself that was taken. The jury determined that the diminution in value of
 TOWN OF NAGS HEAD V. RICHARDSON

 DILLON, J., concurring in part and dissenting in part

Defendants’ lot due to the taking of the easement was $0; that is, the jury determined

that the value of Defendants’ entire lot was not affected by the taking at all. But the

jury also determined that the easement itself had a value of $60,000. Therefore, the

jury returned a verdict of $60,000.

 Following the verdict, the trial court granted the Town’s JNOV motion,

concluding that the only evidence concerning the value of the easement itself offered

at trial was from the Town’s expert, who valued the easement for $330. Indeed,

experts for Defendants did make statements during their testimony suggesting that

the value of the easement itself exceeded $60,000. These statements made by

Defendants’ experts concerning the value of the easement itself is the subject of my

disagreement with the majority.

 The majority essentially holds that (1) Defendants’ experts each gave an

opinion of value concerning the easement itself, (2) the basis of these opinions,

however, were not sufficiently reliable and, therefore, the trial court should not have

allowed the opinions into evidence, (3) the portion of the verdict concerning the value

of the easement itself was not otherwise supported by competent evidence. Based on

this reasoning, the majority concludes that Defendants should get a new trial to have

another opportunity to offer evidence concerning the value of the easement itself,

essentially reasoning that since the trial court erroneously allowed Defendants’

evidence, Defendants felt no need to offer other evidence concerning the value of the

 2
 TOWN OF NAGS HEAD V. RICHARDSON

 DILLON, J., concurring in part and dissenting in part

easement itself. That is, so the majority concludes, had the trial ruled correctly and

excluded the opinion of Defendants’ expert concerning the value of the easement

itself, Defendants may have then offered other evidence on the issue.

 I disagree with the majority’s understanding of the statements made by

Defendants’ experts concerning the value of the easement itself. I believe that while

Defendants’ experts did make such statements, they never intended these statements

to amount to their expert opinion regarding the value of the easement itself. Rather,

Defendants offered their testimonies for the sole purpose of giving their opinions of

the “before” and “after” values of the entire lot; Defendants did not offer these experts

for the purpose of offering evidence on the value of the easement itself, as Defendants

were relying on their testimonies to show that their lot as a whole had suffered a

large diminution in value. It is true that both appraisers in their testimonies did

make statements concerning the value of the easement itself. However, in each case,

the appraiser was simply making an assumption concerning the value of the

easement itself to show how he derived the “after” value of the entire lot.16

 To explain my point, consider that the assumption by Defendants’ appraisers

concerning the value of the easement itself is analogous to other assumptions made

by appraisers in valuing property. For instance, in deriving the “before” value of

 16 For example, one of Defendants’ experts testified that he arrived at a large diminution in
value of the lot as a whole based on a calculation containing several components, one of which was his
estimate of the value of the easement itself.

 3
 TOWN OF NAGS HEAD V. RICHARDSON

 DILLON, J., concurring in part and dissenting in part

Defendants’ lot as a whole, one of Defendants’ appraisers, Mr. Gruelle, relied upon

the reported sales price of three comparable beach-front homes, a common practice

by appraisers in valuing a home. Mr. Gruelle’s analysis contains statements of value

of these comparable homes (based on what they sold for), but these values do not

represent his expert opinion regarding the value of those homes. Indeed, it is doubtful

that he had first-hand knowledge of what those other homes sold for but rather relied

upon hearsay (tax records or data from a multiple listing service). But the values

provide data points that he relied upon to come up with his expert opinion of value of

Defendants’ lot itself. Though these data points would be inadmissible if they were

offered to show the value of the comparable homes themselves, they are admissible

under Rule 70317 to show the data he relied upon to derive his opinion concerning the

value of Defendants’ lot.

 In the same way, Mr. Gruelle’s statement that he estimated the value of the

easement portion of Defendants’ lot to be $190,000 was intended to be an educated

assumption he used in deriving the “after” value of Defendants’ lot as a whole. Mr.

Gruelle did not intend for the $190,000 estimate of the easement itself to be viewed

 17 Rule 703 states that “[t]he facts or data in the particular case upon which an expert bases
an opinion or inference may be those perceived by or made known to him at or before the hearing. If
of a type relied upon by experts in the particular field in forming opinions or inferences upon the
subject, the facts or data need not be admissible in evidence.” N.C. Gen. Stat. § 8C-1, Rule 703
(emphasis added).

 4
 TOWN OF NAGS HEAD V. RICHARDSON

 DILLON, J., concurring in part and dissenting in part

as his expert opinion of the value of the easement itself; he certainly did not derive

this valuation by comparing the easement itself to the sales of other beach strips.

 The trial court did not err in allowing Defendants’ experts to make statements

concerning the value of the easement itself, since they were offered only for the

purpose of explaining how they were deriving the “after” value of Defendants’ lot as

a whole. While such statements would have been inadmissible as evidence to support

a conclusion of value of the easement itself, the statements were certainly admissible

to show the basis of the opinions concerning the “after” value of the lot as a whole,

under Rule 703.

 In conclusion, the only relevant evidence offered concerning the value of the

easement itself came from the Town’s expert, who testified that its value was a mere

$330. Defendants did not offer any relevant evidence concerning the value of the

easement itself, nor did they ever intend to offer relevant evidence, competent or

incompetent, on the value of the easement itself. Their experts merely made

statements concerning the value of the easement itself to explain their opinions of

value of the lot as a whole. The record does not reveal how the jury came up with

their $60,000 valuation of the easement itself. There was no relevant evidence offered

to support such a verdict. Therefore, the trial court properly set aside the verdict.

However, I see no need for a new trial. Defendants were not prejudiced by the trial

court’s evidentiary ruling. Indeed the ruling was correct under Rule 703, and

 5
 TOWN OF NAGS HEAD V. RICHARDSON

 DILLON, J., concurring in part and dissenting in part

Defendants never intended to offer any evidence to prove the value of the easement

anyway.

 6